UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x

JUDITH SCHAPER,

Plaintiff,

-against-

THE BRONX LEBANON HOSPITAL CENTER and WILSON,

Defendants.

-------------------------------------------x

Case No.: 17-cv-01246 (ALC)

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Garfunkel Wild, P.C.*
*111 Great Neck Road*
*Great Neck, New York 11021*

On the Brief: Roy W. Breitenbach

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 2

SUMMARY OF UNDISPUTED FACTS ..... 4

ARGUMENT ..... 4

POINT I

Plaintiff Cannot Raise Any Genuine Issues Of Material Fact On Her Retaliation Claims ..... 5

POINT II ..... 10

Plaintiff Cannot Raise Any Genuine Issues Of Material Fact On Her Hostile Work Environment Claims ..... 10

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)....12

*Anderson v. Dep't of Children & Families, State of Conn.*,
322 F. App'x 15 (2d Cir. 2009)....6

*Auguste v. New York Presbyterian Med. Ctr.*,
59 F. Supp 2d 659 (S.D.N.Y. 2009)....8

*Bendeck v. NYU Hosps. Ctr.*,
77 A.D.3d 5552 (1st Dep't 2010)....6

*Brennan v. Metro. Opera Ass'n, Inc.*,
192 F.3d 310 (2d Cir.1999)....13

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)....4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....4

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir.2000)....11, 12

*Dixon v. Int'l Fed'n of Accountants*,
No. 09 Civ. 2839(HB), 2010 WL 1424007 (S.D.N.Y. Apr. 9, 2010), *aff'd*, 416 F. App'x 107 (2d Cir.2011)....6, 8

*El Sayed v. Hilton Hotels Corp.*,
627 F.3d 931 (2d Cir. 2010)....8

*Fincher v. Depository Tr. & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010)....6

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (2004)....6

*Forte v. Liquidnet Holdings, Inc.*,
No. 14 CIV. 2185 AT, 2015 WL 5820976 (S.D.N.Y. Sept. 30, 2015), *aff'd*, 675 F. App'x 21 (2d Cir. 2017)....11

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)....11

*Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*,
957 F.2d 59 (2d Cir.1992)....................................................................................................12

*Leibovitz v. N.Y. City Transit Auth.*,
252 F.3d 179 (2d Cir. 2001)................................................................................................13

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015)...........................................................................................6, 11

*Magnoni v. Smith & Laquercia, LLP*,
701 F. Supp. 2d 497 (S.D.N.Y.2010)...................................................................................11

*Nieves v. Angelo, Gordon & Co.*,
341 F. App'x 676 (2d Cir. 2009) ........................................................................................10

*Russo v. New York Presbyterian H*osp.,
972 F. Supp. d 429, 450 (E.D.N.Y.2013) ............................................................................11

*Schwapp v. Town of Avon*,
118 F.3d 106 (2d Cir.1997)..................................................................................................12

*Scott v. Harris*,
550 U.S. 372 (2007).................................................................................................................4

*Simmons v. City of New York*,
No. 16-CV-1589 (VEC), 2017 WL 6397745 (S.D.N.Y. Dec. 13, 2017), appeal
dismissed (Feb. 23, 2018) ......................................................................................................4

*Sista v. CDC IXIS N. Am., Inc.*,
445 F.3d 161 (2d Cir. 2006)...................................................................................................4

*Slattery v. Swiss Reinsurance Am. Corp.*,
248 F.3d 87 (2d Cir. 2001).........................................................................................6, 8, 10

*Tolbert v. Smith*,
790 F.3d 427 (2d Cir. 2015)..........................................................................................11, 12

*Torres v. Pisano*,
116 F.3d 625 (2d Cir.1997)....................................................................................................5

*University of Tex. S.W. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013).................................................................................................................8

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*,
973 F. Supp. 2d 386 (S.D.N.Y. 2013)...........................................................................13, 14

*Williams v. N.Y.C. Hous. Auth.*,
872 N.Y.S.2d 27 (App. Div. 2009) .......................................................................................11

*Wolde-Meskel v. Argus Cmty., Inc.*,
No. 99 Civ. 10112 (LMM), 2001 WL 883648 (S.D.N.Y. Aug. 7, 2001) ..............................5, 6

**Statutes**

Civil Rights Act of 1964 title VII (42 U.S.C. § 2000e–3(a)) ..........5, 10, 11

New York City Civil Rights Law ..........10

New York City Human Rights Law ..........5, 11

State Human Rights Law ..........10, 11

State Human Rights Law N.Y ..........10

State Human Rights Law (N.Y. Executive Law § 296(1)(e)) ..........5, 10

**Other Authorities**

Fed. R. Civ. P. 56(a) ..........4

N.Y.C. Admin. Code § 8–107(1)(a) ..........11

(N.Y.C. Admin. Code § 8-107(6) and (13)) ..........5, 10

Rule 56 ..........4

Rule 56.1 ..........4

## PRELIMINARY STATEMENT

The facts underlying this motion are simple and straightforward: The plaintiff, Judith Schaper, was a patient care technician in the Emergency Department of defendant Bronx-Lebanon Hospital Center (the "Hospital"). In August 2015, the Hospital terminated her employment because of insubordination. Specifically, on July 7, 2015, Schaper refused to help the daughter of one of her assigned patients clean and change the patient's soiled diaper. Schaper persisted in this refusal even after being spoken to by the patient's nurse.

Schaper's conduct caused the patient's daughter to submit a formal, written complaint about Schaper to defendant Carol Wilson, the patient care manager on duty during the incident. Wilson, in turn reported the incident to her supervisors and the Director of Labor Relations. After a fact-finding hearing was conducted, the Director of Labor Relations determined that Schaper had committed three violations of the Hospital's code of conduct, including insubordination, and terminated her employment. Although a union member, Schaper never pursued any grievance arbitration or other internal appeal to contest her determination.

Almost two years later, Schaper commenced this lawsuit asserting claims under federal, state, and city employment discrimination laws. Schaper advances two theories: First, the Hospital terminated Schaper's employment in retaliation for Schaper complaining about Carol Wilson's alleged discriminatory animus against Hispanic national origin patient care technicians. Second, Wilson's improper actions created a hostile work environment for Schaper.

Both of these claims are without merit as a matter of law. First, the undisputed evidence is that Schaper did not make any complaint to Labor Relations about Wilson's allegedly improper conduct until *after* (1) the July 7, 2015 incident; (2) the July 31, 2015 fact-finding

hearing as a result of that incident (during which she had union representation); and (3) she became aware of significant disciplinary action being considered against her as a result of that incident. As a matter of law, Schaper cannot sustain a retaliation claim based on allegedly protected activity – the complaint to Labor Relations – that occurred *after* the disciplinary action regarding the July 7, 2015 incident began.

And, in any event, Schaper's insubordination during the July 7, 2015 incident is well-substantiated in the undisputed record, and provides a legitimate, non-discriminatory reason for Schaper's termination. The record is completely devoid of any evidence even remotely supporting Schaper's theory that the Hospital terminated Schaper to protect Wilson from a discrimination complaint. The EEOC agreed with this conclusion, finding that based "on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Nhambiu Decl. Exh. 4.)

Second, even if we were to assume, for purposes of this motion, that Schaper's allegations regarding Wilson's conduct are true, those allegations simply are insufficient to establish a hostile work environment. As we explain in detail below, Wilson's alleged conduct did not objectively create a workplace permeated with discriminatory intimidation, ridicule, or insult sufficiently severe or pervasive to alter the conditions of Schaper's work environment. Indeed, much of what Schaper complains about is simply legitimate enforcement of objective work rules.

For these reasons, this Court should grant the Defendants summary judgment dismissal of all claims.

**SUMMARY OF UNDISPUTED FACTS**

The undisputed facts supporting Defendants' summary judgment motion are fully set forth in the accompanying Defendants' Rule 56.1 Statement, as well as the Declarations of Jasen Nhambiu and Roy Breitenbach. We respectfully refer the Court to these documents.

**ARGUMENT**

As discussed above, Defendants here seek summary judgment dismissal of all of Plaintiff's claims in this lawsuit.

Under Rule 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001). Even in the discrimination context, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment and show more than some metaphysical doubt as to the material facts. *Simmons v. City of New York*, No.

16-CV-1589 (VEC), 2017 WL 6397745, at *6 (S.D.N.Y. Dec. 13, 2017), appeal dismissed (Feb. 23, 2018).

As explained more fully herein, Plaintiff cannot demonstrate a *prima facie* case of retaliation or hostile work environment. Indeed, the record evidence establishes that the Hospital terminated Plaintiff's employment based solely on a legitimate, non-discriminatory reason: Plaintiff's undisputed insubordination. Given this, and that Plaintiff will not be able to offer more than mere conclusory allegations that will fall short of any genuine issue of material fact, summary judgment here should be granted.

## POINT I

## PLAINTIFF CANNOT RAISE ANY GENUINE ISSUES OF MATERIAL FACT ON HER RETALIATION CLAIMS

As discussed above, Plaintiff's first theory is that the Hospital terminated her employment in retaliation for her complaining about Carol Wilson's alleged discriminatory animus against Hispanic national origin patient care technicians. Plaintiff alleges that the Hospital's actions violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–3(a)), the New York State Human Rights Law (N.Y. Executive Law § 296(1)(e)), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107(6) and (13)). Complaint ¶¶ 1; 35-79.

As the Second Circuit has made clear, the same standards that govern Title VII retaliation claims also govern employment retaliation claims under the New York State and City Human Rights Laws. *See Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997); *see also Wolde-Meskel v. Argus Cmty., Inc.*, No. 99 Civ. 10112 (LMM), 2001 WL 883648, at *9 (S.D.N.Y. Aug. 7, 2001).

In this Circuit, to make out a *prima facia* case of retaliation, plaintiff-employee must demonstrate that: (1) she has engaged in protected activity; (2) her employer was aware that she participated in such activity; (3) she suffered an adverse employment action based on her activity; and (4) there is a causal connection between the protected activity and the adverse action. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015); *Anderson v. Dep't of Children & Families, State of Conn.*, 322 F. App'x 15, 16 (2d Cir. 2009); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-313 (2004); *Bendeck v. NYU Hosps. Ctr.*, 77 A.D.3d 5552 (1st Dep't 2010).

As has been repeatedly recognized, there can be no causal connection between the protected activity and the adverse action if the adverse action occurred before the alleged protected activity. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001); *Dixon v. Int'l Fed'n of Accountants*, No. 09 Civ. 2839(HB), 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) ("[Plaintiff] was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed."), *aff'd*, 416 F. App'x 107 (2d Cir.2011) (summary order).

Here, under Plaintiff's retaliation theory, the protected activity is Plaintiff's complaint about Wilson's allegedly discriminatory behavior towards her. Complaint ¶ 22. When Plaintiff first became a Hospital employee in 2013, she received, and acknowledged her obligation to read, the Hospital's Discrimination Complaints Policy. (Nhambiu Decl. Exh. 1; Exh. C, Schaper Dep. at 92-95.) This Policy provided that discrimination complaints are to be made to either the Assistant Vice President of Human Resources or the Director of Labor Relations. (Nhambiu

Decl. Exh. 1.) The first time that Plaintiff complained to Labor Relations (or Human Resources) about Wilson's allegedly discriminatory conduct was August 3, 2015. (Exh. C, Schaper Dep. at 58; Nhambiu Decl. ¶ 33.) Thus, the first date that Plaintiff engaged in protected activity for purposes of her retaliation claims was **August 3, 2015**.

Under Plaintiff's retaliation theory, the adverse action is the disciplinary proceedings undertaken by the Hospital that ultimately resulted in the termination of her patient care technician position. Complaint ¶ 1. These disciplinary proceedings began on July 7, 2015, when the underlying incident occurred, and the patient's daughter first lodged her complaint about Schaper's conduct with Praddy and Wilson. (Nhambiu Decl. ¶¶ 17-18; Ex. F, Praddy Dep. at 18-23; Ex. E, Wilson Dep. at 102-08). Wilson then informed both the Hospital's Emergency Department nurse manager and Labor Relations Director of the incident, and forwarded them the written complaint from the patient's daughter. (Nhambiu Decl. ¶¶ 18-19; Ex. G, O'Regan Dep. at 32-33; Ex. E, Wilson Dep. at 125.) This occurred no later than July 31, 2015. (Nhambiu Decl. Exh. 2.) A fact-finding hearing then was held on July 31, 2015, in which Plaintiff and her union representative participated. (*Id.* Exh. 2).

These key events in the disciplinary proceedings all occurred significantly before the alleged protected activity undertaken by Plaintiff for the first time on August 3, 2015. The patient's daughter first made her complaint to Praddy and Wilson 27 days before the allegedly protected activity. Wilson informed the ED nurse manager and Labor Relations of the issue no later than 13 days before the allegedly protected activity. And, the fact-finding hearing was held on July 31, 2015, three days before the allegedly protected activity.

Given this, there can be no causal link as a matter of law between the protected activity and the already occurred adverse action. *Slattery, supra*; *Dixon, supra*. This alone dooms Plaintiff's retaliation theory to failure.

This is not the only reason that Plaintiff's retaliation theory is doomed to failure. Under the law, if the employer presents a legitimate, non-retaliatory reason for taking the adverse action, then the employee, to survive summary judgment, must come forward with evidence indicating that the adverse action would not have occurred but for the protected activity. *See University of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *Auguste v. New York Presbyterian Med. Ctr.*, 59 F. Supp 2d 659, 663 (S.D.N.Y. 2009).

Here, the undisputed evidence establishes that the Hospital terminated Plaintiff for a legitimate, non-discriminatory reason: her insubordination on July 7, 2015. Specifically, Plaintiff has never disputed the statements by the patient's daughter that Plaintiff ignored the patient throughout her shift. (Nhambiu Decl. Exh. 2 & 3; Exh. H, Harris Dep. at 10-11.) It is similarly undisputed that, when the patient's daughter directly asked Plaintiff to assist her in changing the patient's soiled diaper, Plaintiff did not do so. (Nhambiu Decl. Exh. 2 & 3; Exh. H, Harris Dep. at 47; Exh. C, Schaper Dep. at 63-68.) Instead, Plaintiff told the patient's daughter "we don't do that, you will have to change her, . . ." and then asked "[i]sn't that your mom, you should be willing to clean her." (Nhambiu Decl. Exh. 2.) And, although Plaintiff has stated that she told the patient's daughter that she would come back in 10 minutes and help change the diaper, it is undisputed that Plaintiff never did so. (Nhambiu Decl. Exh. 2 &3; Exh. H, Harris Dep. at 7.)

Relatedly, when explaining the incident to Wilson, Nurse Praddy said that, late in the shift on July 7, 2015, the daughter of an Emergency Department patient suspected of having suffered a stroke told Praddy that she had asked Plaintiff to help her change her mother, who had soiled her diaper, and Plaintiff refused. (Ex. F, Praddy Dep. at 17-18; Ex. E, Wilson Dep. at 103-05.) Praddy then went to speak about the issue with Plaintiff, who was on rounds going from patient to patient. Schaper categorically told Praddy that she was not going to assist the patient's daughter, and was not going to clean the patient. Praddy warned Schaper that the patient's daughter could complain about her refusal to change the patient, but Schaper told Praddy "I don't care she can do whatever she wants but I am not cleaning her." (Nhambiu Decl. Exh. 2; *see also* Exh. F, Praddy Dep. at 18-22; Exh. E, Wilson Dep. at 105.)

When confronted with Praddy's statements at the July 31, 2015 fact finding hearing, Plaintiff – who was accompanied by union representation – did not dispute them at all. Instead, when asked at the hearing how Nurse Praddy got involved in the issue, Schaper said "I don't know." Schaper did acknowledge Praddy telling her "you didn't want to change the patient," but "gave no indication of any additional dialogue between herself and RN Praddy." (Nhambiu Decl. Exh. 2.)

Given this undisputed record, the Hospital's Director of Labor Relations decided to terminate Schaper's employment based three violations of the Hospital's code of conduct including insubordination. It is undisputed that, per the code of conduct, insubordination carries with it the potential penalty of termination. (Nhambiu Decl. Exh. 1.)

Thus, Plaintiff's insubordination provides a legitimate, non-discriminatory reason for her termination. *See Nieves v. Angelo, Gordon & Co.*, 341 F. App'x 676, 679 (2d Cir. 2009);

*Slattery*, *supra*. As a result, to survive summary judgment, Plaintiff needs to raise a genuine issue of fact establishing that the alleged adverse action would not have occurred but for the protected activity. *See id.*

Plaintiff has failed to do this. The record is completely devoid of any evidence even remotely supporting Schaper's theory that the Hospital terminated Schaper to protect Wilson from a discrimination complaint. The EEOC agreed with this conclusion, finding that based "on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Nhambiu Decl. Exh. 4.)

For these reasons, summary judgment dismissal of Plaintiff's retaliation claims are appropriate.

## POINT II

## PLAINTIFF CANNOT RAISE ANY GENUINE ISSUES OF MATERIAL FACT ON HER HOSTILE WORK ENVIRONMENT CLAIMS

As discussed above, Plaintiffs' second liability theory is that Wilson's improper actions created a hostile work environment for Plaintiff in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–3(a)), the New York State Human Rights Law N.Y. Executive Law § 296(1)(e)), and the New York City Civil Rights Law (N.Y.C. Admin. Code § 8-107(6) and (13)). Plaintiffs' claims are without merit and should be dismissed on summary judgment.

To establish a hostile work environment claim under Title VII or the New York State Human Rights Law, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Littlejohn v. City of N.Y.*,

795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. *Id.* at 321.1

Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim. See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) ("Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances."). The factors that courts may consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

"As a general rule, incidents must be more than "episodic"; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Therefore, plaintiff must demonstrate either a single incident that was extraordinarily severe, or a series of incidents that were *sufficiently continuous and concerted* to have altered the conditions of her working environment. *Alfano v. Costello*, 294 F.3d 365, 374

1 Hostile work environment claims under the New York City Human Rights Law are analyzed under a slightly different standard than under Title VII or the New York State Human Rights Law. To survive summary judgment on a City Law hostile work environment claim, the plaintiff must raise a genuine issue of material fact establishing "differential treatment—that she is treated 'less well'—because of a discriminatory intent." N.Y.C. Admin. Code § 8–107(1)(a); *see also Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (App. Div. 2009). Like Title VII and the State Law, however, the City Law, "is still not a general civility code, and petty slights and trivial inconveniences are not actionable." *Forte v. Liquidnet Holdings, Inc.*, No. 14 CIV. 2185 AT, 2015 WL 5820976, at *8 (S.D.N.Y. Sept. 30, 2015), *aff'd*, 675 F. App'x 21 (2d Cir. 2017); *Russo v. New York Presbyterian H*osp., 972 F. Supp. d 429, 450 (E.D.N.Y.2013); *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505–06 (S.D.N.Y.2010) (finding that the plaintiff could not sustain a sexual harassment claim under NYCHRL where her supervisor "[told] a crude anecdote from his sex life with another woman, and occasionally refer[ed] to [the plaintiff] as voluptuous and knock [ed] her knee.)

(2d Cir. 2002) (quoting *Cruz v. Coach Stores*, Inc., 202 F.3d 560, 570 (2d Cir. 2000)) (emphasis added).

Stated another way, for "racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir.1997); *see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992). Overall, "the quantity, frequency, and severity of th[e] slurs [at issue]" are to be "considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp*, 118 F.3d at 110-11 (internal quotation marks and citation omitted).

In *Tolbert*, for example, the plaintiff employee failed to identify facts showing his work environment was objectively hostile and abusive. Plaintiff alleged that the defendant made two offensive statements in his presence. Only one remark, regarding "black food," concerned race. The other remark was ambiguous and could not be connected to plaintiff's race. And whatever the meaning of the remarks, they do not qualify as "a steady barrage of opprobrious racial comments" that altered the conditions of plaintiff's employment. *See* 790 F.3d at 439.

Here, Plaintiff's allegations of a hostile work environment include (1) "referring to Ms. Schaper and the other Hispanic Women on her shift as 'you people'"; (2) "referring to Hispanics as 'always having to dress to show something' and indicating the breasts and buttocks"; and (3) "mimicking Ms. Schaper's Spanish language, when Ms. Schaper and her co-workers spoke in Spanish during her break." (Complaint ¶ 22.)

Assuming, for purposes of this motion, that defendant Wilson made these statements, these statements do not rise to the level of objectively severe or pervasive conduct that was *sufficiently continuous and concerted* to have altered the conditions of her working environment. Such random and anecdotal comments, made over a few-month period hardly establish that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) (continuous display of sexually explicit pictures in office plaintiff shared, along with one instance of sexual banter, could not reasonably be characterized as physically threatening or humiliating").

Likewise, although Plaintiff alleged in her complaint that Wilson was guilty of making "threats and physically intimidating Ms. Schaper and other Hispanic employees," (Complaint ¶ 22((g)), Plaintiff admitted at her deposition that the threats simply consisted of Wilson telling her "you're not supposed to do that," and that "you can get fired for that," when she took a urine vial from a patient and dumped it. (Schaper Dep. at 53-54.) Regarding physical contact, Plaintiff testified "she didn't make no contact with me, it was just the day I got terminated she was running up behind me. So I took that as, this was a threat because I didn't know what she wanted." (*Id.*) These isolated incidents, like those above, are not sufficiently severe or pervasive to raise a genuine issue of material fact. *See Leibovitz*, 252 F.3d at 188; *Brennan*, 192 F.3d at 318. There is also no connection between these incidents and any racial animus against Plaintiff in particular or employees of Hispanic national origin in general. *See, e.g*, *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 406 (S.D.N.Y. 2013) (granting summary judgment dismissal of hostile work environment claim, in part, because while the plaintiff

"highlights various items that made her work life unpleasant, including her poor relations with her supervisors and the negative feedback about her job performance, . . . there is nothing linking those items to racial hostility").

Similarly, Plaintiff here also cites several other examples of Wilson's alleged conduct that purportedly created a hostile work environment. These include: (1) "removing Ms. Schaper and the other Hispanic employees on her shift from their assigned posts, to cover other assignments, then intentionally leaving the original assigned post vacant" (2) "assigning only the Hispanic workers, including Ms. Schaper, to perform jobs designated to be covered by at least two people"; and (3) making "threats and physically intimidating Ms. Schaper and other Hispanic employees." (Complaint ¶ 22.)

However, the record evidence establishes that, as a patient care manager, Wilson had the ability to assign, re-assign, and change work and work areas to patient care technicians, based upon patient demand, staffing, and the needs of the Emergency Department. . (Nhambiu Decl. ¶ 14.) While Plaintiff speculated in her Complaint, and at her deposition, that her assignments and those of a Hispanic co-worker were motivated by discriminatory animus, Plaintiff provides no concrete examples of similarly situated employees of differing national origins being treated differently by Wilson in connection with assignments. Thus, Plaintiff cannot survive summary judgment on these claims. *See Wesley-Dickson*, 973 F. Supp. 2d at 406.

Finally, Plaintiff contends that Wilson created a hostile work environment by admonishing her "for speaking Spanish to her co-workers." (Complaint ¶ 22(f).) However, the Hospital had a customer services policy prohibiting its Emergency Department staff from publicly speaking languages other than English to each other in front of patients and visitors.

(Nhambiu Decl. ¶ 16.) Plaintiff has not, and cannot, come forward with any evidence establishing that this was anything other than a national origin neutral application of this policy.

## **CONCLUSION**

For all these reasons, and those set forth in the accompanying papers, Defendants respectfully request that this Court grant summary judgment dismissal of Plaintiff's claims in their entirety.

Dated: Great Neck, New York
November 8, 2018

GARFUNKEL WILD, P.C.
*Attorneys for Defendants*

By: */s/ Roy W. Breitenbach*

Roy W. Breitenbach

111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200