UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH SCHAPER, Plaintiff, -against- THE BRONX LEBANON HOSPITAL CENTER and CAROL WILSON, Defendants. | **DECLARATION SUPPORTING DEFENDANTS' SUMMARY JUDGMENT MOTION** Case No.: 17-cv-01246 (ALC) |

**Jasen Nhambiu**, declares, under the penalties of perjury and pursuant to 28 U.S.C. § 1746, that:

1. For the last seven years, I have been the Director of Labor Relations at Defendant Bronx-Lebanon Hospital Center, now known as BronxCare Health System (the "Hospital"). I am also a licensed attorney in New York. I am personally familiar with the matters set forth in this declaration.

2. As the Hospital's Director of Labor Relations, I was involved in the Hospital's 2015 decision to determine the employment of the Plaintiff, Judith Schaper, as an Emergency Department patient care technician because of insubordination. As I explain in detail below, this insubordination is well-substantiated in the undisputed record, and provides a legitimate, non-discriminatory reason for Schaper's termination.

3. Even if we were to assume, for purposes of this motion, that Schaper's allegations regarding Defendant Wilson's conduct are true – which they are not – those allegations simply are insufficient to overcome the legitimate, non-discriminatory reason for Schaper's termination or to avoid summary judgment dismissal. As we explain in detail below, and in the

accompanying motion papers, Defendant Wilson's alleged conduct – which she complained about for the first time after the disciplinary proceedings against her started – did not objectively create a workplace permeated with discriminatory intimidation, ridicule, or insult sufficiently severe or pervasive to alter the conditions of Schaper's work environment.

4. For these reasons, this Court should grant Defendants' summary judgment motion in its entirety.

**Introduction**

5. The Hospital is a large not-for-profit health care system serving the South and Central Bronx, with 972 beds. The Hospital's ER responds to 139,000 visits annually. The Hospital's President and Chief Executive Officer is Miguel A. Fuentes.

6. The Hospital is an equal opportunity employer. (Exhibit 1.)

**Plaintiff's Hiring at the Hospital**

7. The Hospital hired the Plaintiff, Judith Schaper, as a patient transporter on May 6, 2013. (Exhibit 1.) As part of the Hospital's pre-hiring orientation process, Schaper on April 12, 2013 acknowledged receipt of the Employee Handbook and her obligation to read the Handbook. (Exhibit 1.)

8. The Handbook included a Discrimination Complaints Policy, which states, in relevant part, "the Bronx-Lebanon Hospital Center provides employees with a means to express concerns when they feel discriminated against and an internal compliant procedure to have those concerns objectively heard and corrective action taken when appropriate or necessary." (Exhibit 1.)

9. The Policy then goes on to set forth a detailed procedure for making and handling discrimination complaints. Under this procedure, Complaint Intake Forms are available in the Human Resources Division or on the Hospital-wide intranet. Completed forms are to be returned to either me or the Assistant Vice President of Human Resources. After making a complaint, Labor Relations will conduct an investigation, which will include a confidential interview of the complainant. (Exhibit 1.)

**Schaper Becomes a Patient Care Technician**

10. On March 9, 2015, the Hospital transferred Schaper from her patient transporter position to the position of patient care technician in the Hospital's Emergency Department.

11. As a patient care technician, Schaper received work assignments from the registered nurses in the Hospital's Emergency Department. These nurses reported to assistant nursing care coordinators. In turn, the assistant nursing care coordinators reported to Emergency Department patient care managers.

12. From March through August 2015, the Emergency Department patient care managers reported to Gagandra "Tony" Ramagahan, the Emergency Department's Assistant Nurse Manager. During this same period, Ramagahan reported to Margaret "Mairead" O'Regan, the Emergency Department's Nurse Manager.

13. Although Mairead O'Regan was the Emergency Department's Nurse Manager, the decision whether to terminate an Emergency Department patient care technician engaging in wrongful conduct rested with Labor Relations.

14. The Emergency Department's registered nurses, assistant nursing care coordinators, and patient care managers all had the ability to assign, re-assign, and change work

and work areas to patient care technicians, based upon patient demand, staffing, and the needs of the Emergency Department.

15. Patient care technicians were required to wear scrubs of certain types, appearance, and colors. Supervisors had the right to discipline patient care technicians who failed to comply with these uniform requirements or otherwise wore ill-fitting scrubs while providing patient care.

16. The Hospital has a customer services policy prohibiting its Emergency Department staff from publicly speaking languages other than English to each other in front of patients and visitors.

**The July 7, 2015 Incident**

17. In mid-July 2015, I learned from Carol Wilson, a patient care manager in the Emergency Department, that a complaint had been filed against Schaper by a patient's daughter accusing Schaper of ignoring and refusing to care for her mother while an ED patient on July 7, 2015.

18. Carol Wilson forwarded me a statement from the patient's daughter, dated July 7, 2015. In the statement, the patient's daughter wrote that earlier that day she asked Schaper "if my mom could be changed because she uses diapers." Schaper responded that "she was busy doing EKG's and as soon as she was finished she would get back to me. So again I said to her my mom is wet and she has not been changed all night, from after 8pm until after 5am this morning." (Exhibit 2.)

19. According to the patient's daughter, Schaper went on to state that "In the Emergency [Department], we don't do that, you will have to change her, we don't have diapers here." Schaper then asked the patient's daughter "Isn't that your mom, you should be willing to

clean her." Schaper went on to tell the daughter that she needed to get her own diaper. The patient's daughter then went out to her car, got diapers and changed her mother. (Exhibit 2.)

20. The patient's daughter ended her statement by saying that, from her observation of Schaper, "she spent the entire night attending to a specific group of people making sure their needs were met while others were totally ignored." (Exhibit 2.)

21. In addition to speaking with the patient's daughter, Wilson also spoke to the registered nurse who was responsible for Schaper on the July 7 shift, Renee Praddy.

22. Praddy told Wilson that the patient's daughter had approached her during the shift and told Praddy that she had asked Schaper to help her change her mother, who had soiled her diaper, and Schaper refused.

23. Praddy then went to speak about the issue with Schaper, who was on rounds going from patient to patient. Schaper told Praddy that she was not going to assist the patient's daughter, and was not going to clean the patient. Praddy warned Schaper that the patient's daughter could complain about her refusal to change the patient, but Schaper told Praddy "I don't care she can do whatever she wants but I am not cleaning her. (Exhibit 3.)

24. Wilson summed up her understanding of the entire incident in her cover email to me enclosing the patient's statement. Wilson stated that the "daughter sat at her mother's bedside all night and PCT Schaper in the carrying out of her duties did absolutely nothing for the patient; and in the morning when asked to assist with cleaning her she refused." (Exhibit 3.)

**<u>Disciplinary Proceedings</u>**

25. A fact-finding hearing was held on July 31, 2015, to obtain Schaper's response to the July 7 incident. Attending the hearing was Schaper, her union delegate, Wilson, and a nursing supervisor. (Exhibit 2.)

26. At the hearing, Schaper admitted that, when the patient's daughter asked her to help change the patient's diaper, she did not do so. (Exhibit 2.)

27. Although Schaper at the hearing said that she told the patient's daughter she would come back in 10 minutes to help change the diaper, Schaper did not address the fact that she never did so. Schaper also failed to address the allegation by the patient's daughter that Schaper had ignored the patient throughout her shift. (Exhibit 2.)

28. When asked at the hearing how Nurse Praddy got involved in the issue, Schaper said "I don't know." Schaper did acknowledge Praddy telling her "you didn't want to change the patient," but "gave no indication of any additional dialogue between herself and RN Praddy." (Exhibit 11).

**<u>Schaper's Termination</u>**

29. After the hearing, I made the decision to terminate Schaper's employment. I made this decision based on Schaper having committed the following three infractions:

a. Insubordination- failure to carry out the instructions of the Registered Nurse under whose jurisdiction she works.

b. Employee Behavior- Employees must interact professionally, courteously and appropriately, with patients, visitors and other employees. Employees must behave in a manner consistent with and furthering a positive perception of BLHC and its employees.

c. Exercising substandard performance in work responsibilities, which has a negative impact on patient care and/or hospital services. Failure to render assistance or care to a Patient.

(Exhibit 2.)

30. Under the Hospital's Rules of Conduct, the infraction of insubordination by an employee can result in the employee's termination. (Exhibit 1.)

31. The Hospital formally informed Schaper of the termination of her employment in an August 11, 2015 conference. (Exhibit 2.)

32. Subsequent to the termination, Schaper never pursued any grievance arbitration or other internal appeal to contest her determination.

33. On August 3, 2015, 27 days after the July 7 incident, and four days after the fact-finding hearing, Schaper went to Labor Relations and lodged a discrimination complaint against Carol Wilson, contending that Wilson was harassing her because of her Hispanic national origin. This was the first time that Schaper had complained to Labor Relations about Carol Wilson.

34. After her termination, Judith Schaper filed a charge of national origin discrimination and retaliation against the Hospital and Carol Wilson with the United States Equal Employment Opportunity Commission. (Exhibit 4.)

35. On November 22, 2016, the EEOC determined that based "on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Exhibit 4.)

**Conclusion**

36. For all the reasons set forth above, and in the accompanying papers, Defendants urge this Court to grant summary judgment dismissal under Fed. R. Civ. P. 56 of Plaintiff's claims in their entirety.

37. I declare under penalty of perjury that the foregoing is true and correct. Executed on November 9, 2018.

JASEN NHAMBIU



5069510v.1