UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUDITH SCHAPER Case No. 17-cv-01246
Plaintiff,

**-against-**

THE BRONX LEBANON HOSPITAL CENTER and
CAROL WILSON

Defendants.
-------------------------------------------------------------------X

**PLAINTIFF JUDITH SCHAPER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

William Cafaro, Esq.
LAW OFFICES OF WILLIAM CAFARO
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
Tel: (212) 583-7400
Fax: (212) 583-7401
E-mail:BCafaro@CafaroEsq.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 3

STATEMENT OF FACTS ........ 3

DEFENDANTS' HAVE FAILED TO MEET THEIR BURDEN TO GRANT THE HARSH REMEDY OF SUMMARY JUDGMENT ........ 6

A. Plaintiff is in a Protected Class ........ 9

B. Plaintiff Was Qualified for the PCT Position ........ 9

C. Plaintiff Suffered Numerous Adverse Employment Actions ........ 10

D. The Numerous Adverse Employment Actions Plaintiff Suffered Occurred Under Circumstances Giving Rise to an Inference of Discrimination ........ 10

E. Defendants' Proffered Justification for Ms. Schaper's Termination Is Pretextual ........ 14

PLAINTIFF HAS ESTABLISHED VIABLE CLAIMS OF HOSTILE WORK ENVIRONMENT ........ 16

A. Plaintiff Has Satisfied Her More Lenient Burden Under The New York City Human Rights Law ........ 19

PLAINTIFF HAS ESTABLISHED A VIABLE CLAIM OF RETALIATION ........ 20

A. Plaintiff Engaged In Protected Activity ........ 21

B. Defendants Were Aware of the Protected Activity ........ 22

C. Defendants Took Numerous Adverse Employment Actions Against Ms. Schaper ........ 23

D. A Casual Connection Exists Between the Adverse Actions and the Protected Activities 24

E. Defendants Proffered Reasons for the Employment Actions are Pretextual ........ 27

F. Plaintiff Has Carried Her Lesser Burden Under the NYCHRL ........ 27

PLAINTIFF HAS ESTABLISHED A VIABLE CLAIM FOR AIDING AND ABETTING DISCRIMINATION AND EMPLOYER LIABILITY ........ 28

CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Cases**


*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................ 6
*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d. 107, 124 (2d Cir. 2004) ............ 12
*Bennett v. Health Mgmt. Sys. Inc.*, 92 A.D.3d 29, 43-44 (1st Dept. 2011)................................... 14
*Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) ........................................ 22
*Brierly v. Deer Park Union Free School Dist.*, 359 F.Supp.2d 275, 289 (E.D.N.Y. 2005) ........... 7
*Celestino v. Montauk Club*, 97 CV 3943 (CLP), 2000 U.S. Dist. LEXIS 21845, at *57-58 (E.D.N.Y. Mar. 12, 2000) .............................................................................................. 8, 28
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 6
*Chambers v. TRM Ctrs. Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994) .................................................. 11
*Chukwurah v. Stop & Shop Supermarket Co.,* 354 Fed. Appx. 492, 495-596 (2d Cir. 2009)........ 9
*Collins v. Cohen Potani*, No. 04 CV 8983(KMW)(MHD), 2008 U.S. Dist. LEXIS 58047, at *65 (S.D.N.Y. July 30, 2008) ................................................................................................. 14
*Crull v. GEM Insurance Co.* 58 F.3d 1386 (9th Cir. 1995)............................................................ 7
*Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) .................................................... 21
*Davis v. Metro. Transp. Auth.*, 2012 U.S. Dist. LEXIS 30761, at *29 (S.D.N.Y. Mar. 6, 2012) 27
*DeLuca v. Allied Domecq Quick Service Restaurants*, No. 03-CV-5142 (JFB), 2006 U.S. Dist. LEXIS 39261, at *34 (E.D.N.Y. June 13, 2006) ............................................................... 24
*Ellis v. Century 21 Dep't Stores,* 975 F.Supp.2d. 244, 271 (E.D.N.Y. 2013) ............................. 11
*Espinal v. Goord*, 558 F.3d. 119, 129 (2d Cir. 2009) ................................................................. 26
*Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011)......................................... 23
*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ........... 21, 22
*Gallo v. Prudential Residential Serv.*, 22 F.3d 1219 (2d Cir. 1994) ............................................. 6
*Graham v. Long Island R.R.*, 230 F.3d. 34, 38 (2d. Cir. 2000) .................................................. 11
*Grana v. Potter*, No. 06-CV-1173 (JFB)(ARL), 2009 U.S. Dist. LEXIS 13159, at *43 (E.D.N.Y. Feb. 19, 2009) ................................................................................................................ 10
*Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 362 (S.D.N.Y. 2006)...................................... 23
*Holdomb v. Iona Coll.* 521 F.3d. 130, 138 (2d Cir. 2008)............................................................ 9
*Holmes v. Brentwood Union*, No. CV-03-1084 (TCP)(AKT), 2006 U.S. Dist. LEXIS 41081, at *14 (E.D.N.Y. May 25, 2006) ........................................................................................ 14
*Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975) .......................................................... 6
*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)............................................................ 6
*Joseph v. Leavitt*, 465 F.3d. 87, 90 (2d Cir. 2006)...................................................................... 10
*Joseph v. Owens & Minor Distribution,* 5 F. Supp. 3d 295, 318 (E.D.N.Y. 2014)..................... 23
*Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2d Cir. 2005) ................................ 24
*Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 847 (2d Cir. 2013)................................................. 27
*Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)............................................... 24
*Lyman v. N.Y. & Presbyterian Hosp.*, 2014 U.S. Dist. LEXIS 95492, at *61-62 (S.D.N.Y. July 14, 2014) .............................................................................................................................. 28
*Marbury Management, Inc. v. Kohn*, 629 F. 2d. 705, 712 n.4 (2d Cir. 1980)............................... 7
*Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010)................................. 22
*McCarthy v. Dun & Bradstreet Corp.*, 484 F.3d 184 (2d Cir. 2007) ........................................... 6
*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)........................................................ 10
*Mihalik v. Credit Agricole Cheavreux N. Am., Inc.*, 715 F.3d. 102, 110 (2d Cir. 2013).... 9, 20, 28

*Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978) ........................................ 24
*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011)........ 22, 23
*Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 227 (2d Cir. 2004) ............................. 19
*Pealo v. AAF McQuay, Inc.*, 140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) ...................................... 7
*Phillps v. Bowen*, 278 F.3d. 103, 109 (2d. Cir. 2002).............................................................. 17
*Pryor v. Jaffe & Asher, LLP.*, 992 F.Supp.2d 252, 257 (S.D.N.Y 2014) .................................... 20
*Pucino v. Verizon Wireless Comm., Inc.*, 618 F.3d 112 (2d Cir. 2010)...................................... 19
*Quinby v. WestLB AG*, 2007 U.S. Dist. LEXIS 28657, at *15-16 (S.D.N.Y. Apr. 19, 2007) ...... 11
*Ragin v. E. Ramapo Cent. Sch. Dist.*, 417 Fed. Appx. 81, 82 (2d Cir. 2011)............................. 11
*Ramos v. Marriott International, Inc.*, 134 F.Supp 2d 328, 338 (S.D.N.Y 2001)......................... 9
*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1181 (2d Cir. 1996) ........................................... 27
*Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d. 426, 446 (2d. Cir. 1999) ........... 10
*Richardson-Holness v. Alexander*, 196 F. Supp. 3d 364, 371 (E.D.N.Y. 2016) ......................... 16
*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) .................... 17
*Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 193 (E.D.N.Y. 2008) ....................................... 26
*Rose v. New York City Bd. of Edu.*, 257 F.3d. 156, 162 (2d. Cir. 2011)...................................... 12
*Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ................................................................ 6
*Russell v. County of Nassau*, 696 F. Supp. 2d 213, 237 (E.D.N.Y. 2010).................................. 22
*Sacks v. Gandhi Eng'g, Inc.*, 999 F.Supp. 2d 629, 643 (S.D.N.Y. 2014).................................... 14
*Salerno v. City Univ. of N.Y.*, 2003 U.S. Dist. LEXIS 16474, at *36 (S.D.N.Y. Sep. 16, 2003) 10, 24
*Sarno v. Douglas Elliman-Gibbons & Ives*, 183 F.3d 155, 160 (2d Cir. 1999)........................... 24
*Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 248 (E.D.N.Y. 2014)................................................... 28
*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) .................................... 19
*Schwapp v. Town of Avon*, 118 F.3d 106,110 (2d Cir. 1997) ........................................................ 7
*Sclafani v. P.C. Richard & Son*, 668 F.Supp. 2s 423 (E.D.N.Y. 2009)........................................ 16
*Signer v. Tuffy*, 66 Fed. Appx. 232, 235 (2d Cir. 2003) ............................................................. 10
*Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979)................................................... 24
*Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d. 87, 92 (2d. Cir. 2011)............................................ 9
*Summa v. Hofstra*, 708 F.3d. 115, 125 (2d Cir. 2013)......................................................... 21, 27
*Taddeo v. L.M. Berry & Co.*, 526 Fed. Appx. 121, 122 (2d Cir. 2013)......................................... 6
*Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582, 2012 U.S. Dist. LEXIS 170917, at *21 (E.D.N.Y. Nov. 30, 2012)................................................................................................. 23
*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013).............................. 16
*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).......................... 10, 23
*Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)................................................ 8
*Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000).................................................... 13
*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) ........................... 17
*Williams v. Palladia, Inc.*, No. 07 cv 7720 (CM), 2009 U.S. Dist. LEXIS 15516, at *21 (S.D.N.Y. Feb. 10, 2009) ............................................................................................................... 11
*Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479-80 (N.Y 2010) ................................................... 28

## PRELIMINARY STATEMENT

Plaintiff, Judith Schaper ("Plaintiff" or "Ms. Schaper"), a Hispanic female, brings this action against The Bronx Lebanon Hospital Center ("BLH") and Carol Wilson ("Wilson") (collectively "Defendants") because she was subjected to unlawful discrimination, hostile work environment, and retaliation due to her national origin and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL") and the New York City Human Rights Law ("CHRL").

Unsurprisingly, Defendants categorically deny any wrongdoing and bring the instant motion seeking summary dismissal of Plaintiff's Complaint. What is surprising is that Defendants almost exclusively use facts which have been contravened in the record. For the reasons set forth below, Plaintiff respectfully submits this memorandum of law in opposition to Defendants' Motion for Summary Judgment and avers that Defendants' Motion should be denied in its entirety and this matter set down for trial.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Counter Statement of Material Facts pursuant to Local Civil Rule 56.1, the Defendants' Statement pursuant Local Civil Rule 56.1, where not disputed, the Declaration of William Cafaro, and all exhibits annexed thereto for a full recitation of the facts relevant to the determination of this motion. Plaintiff summarizes the facts in brief as follows:

Ms. Schaper began working for BLH on May 6, 2013 as a Patient Transporter. Plaintiff's Counterstatement of Disputed Facts (hereinafter "Pl.'s Counter Stmt"), ¶ 3, 40. In an effort to improve herself and to move up in the organization, Ms. Schaper went to school on her own time

and at her own expense in order to get to the necessary education to advance to the next level, a Patient Care Technician ("PCT"). *Id.* at ¶ 46. Prior to becoming a PCT all of Ms. Schaper's reviews had been overwhelmingly positive. *Id.* at ¶¶ 42-45; 47. When she became a PCT her supervisor became Defendant Wilson, a woman with a discriminatory animus towards Hispanics. *Id*. at ¶¶ 14 (iii)-(ix); 14(xi)-(xii); 15 (vi)-(viii); 24(iii)-(viii); 26; 27(iv); 36; 37; 80-89. Not only did Defendant Wilson ridicule Ms. Schaper for speaking Spanish to another Hispanic employee during breaks, she also singled out Ms. Schaper and Ms. Soto-Johnson, another Hispanic employee, for ridicule because their scrubs were allegedly too tight, but did not make similar comments to non-Hispanic employees. *Id.* After Ms. Schaper complained about this and other treatment to Mairead O'Regan (Director of Nursing in the Emergency Department) and Tony Ramgahan (Assistant Director of Nursing in the Emergency Department) over the course of several months, Defendant Wilson finally saw her opportunity to have Ms. Schaper terminated from the Hospital. *Id*. at ¶¶ 36 (ii) – (viii). On July 7, 2015, Ms. Schaper was asked by a patient's daughter to change a patient's diaper. *Id*. at ¶¶16, 17. Shortly before that request had been made, she was ordered by an attending physician to administer a stat[1] EKG. *Id.* She explained to the patient's daughter that she had to do an EKG and would be back in about 10 minutes to take care of the patient. *Id.* After completing the EKG and taking the EKG patient to the code room, precisely as she had been directed by the doctor, she came back to check on the patient who needed to be changed. *Id.* However, the patient had already been changed. *Id*. at ¶21. This is not contradicted anywhere in the Defendants' Rule 56.1 Statement or in the testimony of any of the witnesses. Therefore, Plaintiff did exactly what Wilson had expected her to do in this scenario. *Id*, at ¶ 17(vii).

[1] "Stat" is defined in Dorland's Illustrated Medical Dictionary, 30th Ed., as Latin *statim*, meaning at once, immediately. When the attending physician in question, Dr. Mukherjee, was asked if "stat" had a connotation of immediacy as it is normally used in the emergency room, he replied that it does. Mukherjee Dep. at 19:13-19:25.

Despite the fact that Plaintiff was accused of ignoring the patient's daughter for the entire shift, she had moved her away from a noisy psychiatric patient and given her a blanket. *Id.* at ¶¶ 21. While the patient's daughter was still upset, she was asked by Defendant Wilson to write a complaint about Ms. Schaper. Defs' Stmt. Of Matl Facts at ¶ 21. The patient's daughter did write out a complaint about Ms. Schaper. Pl.'s Counter Stmt at ¶ 22. Defendant Wilson emailed this complaint to the Director of Labor Relations. *See*, Pl.'s Counter Stmt at ¶ 24 (iii). In the covering email, Defendant Wilson goes so far as to accuse Ms. Schaper of racism. *Id.* Defendant Wilson made the decision to terminate Ms. Schaper though it is the Director of Labor Relations who approved Wilson's recommendation of termination. *Id.* at ¶ 12. Many of the people involved in Ms. Schaper's termination now believe that other remedies for Ms. Schaper would have been better. *Id.* at ¶¶ 64-65. Moreover, in the normal course, termination would not be the proper punishment for Ms. Schaper's infractions. *Id.* at ¶¶ 32; 33. Also, since Ms. Schaper's termination Defendant Wilson had her performance as a manager reviewed for bias and favoritism, and not being impartial in her approach at BLH. *Id.* at ¶¶ 80-89. Rather than face the consequences or modify her behavior, Defendant Wilson resigned from her position. *Id.* at ¶80.

After her termination Doctor Mukherjee, the doctor who had directed Ms. Schaper to administer the stat EKG, was willing to write Ms. Schaper a letter of recommendation. *Id*. at ¶71. Knowing that she was represented by an attorney, Dr. Mukherjee spoke with his superiors at BLH in order to ask permission to write a letter of recommendation for her. *Id*. at ¶¶72-76. Pursuant to what he was told by his boss, the Chairman of the Emergency Department at BLH, he stated he was not allowed to write a letter of recommendation for Ms. Schaper. *Id*. at ¶78.

**DEFENDANTS' HAVE FAILED TO MEET THEIR BURDEN TO GRANT THE HARSH REMEDY OF SUMMARY JUDGMENT**

The Second Circuit has ruled that the granting of a motion for summary judgment is a drastic remedy, which must be used "sparingly." *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219 (2d Cir. 1994). The burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In making this determination, the court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 484 F.3d 184 (2d Cir. 2007). A fact is "material" if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In reviewing such a motion, "the judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). If there are any doubts as to the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment must be denied. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975).

The Second Circuit has cautioned that "[w]here an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions

must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Taddeo v. L.M. Berry & Co.*, 526 Fed. Appx. 121, 122 (2d Cir. 2013). For this reason, the Second Circuit has repeatedly cautioned against granting summary judgment in employment discrimination cases because the employer's intent is often at issue and is difficult to determine. *Schwapp v. Town of Avon*, 118 F.3d 106,110 (2d Cir. 1997). Indeed, "in the context of employment discrimination cases, summary judgment is 'ordinarily inappropriate' because the allegations therein require exploration into an employer's motivation and intent for an employment decision." *Pealo v. AAF McQuay, Inc.*, 140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) (quoting *Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 306 (S.D.N.Y. 2000)); *Brierly v. Deer Park Union Free School Dist.*, 359 F.Supp.2d 275, 289 (E.D.N.Y. 2005) ("Summary judgment ... should be granted with caution in employment discrimination cases"). Here, there are ample disputes of material fact that must only be resolved by a fact finder at trial. As a result, Defendants' motion should be denied in its entirety.

**PLAINTIFF HAS ESTABLISHED CLAIMS OF DISCRIMINATION**

Surprisingly, although the Defendants request the Court dismiss Ms. Schaper's complaint in its' entirety, they fail to argue that Ms. Schaper's discriminatory discharge is subject to their motion to their motion for summary judgment. Rather they only argue that Ms. Schaper has claims for retaliation and hostile work environment. This is simply incorrect. Ms. Schaper has claims for discrimination pursuant to Title VII, the SHRL, and the CHRL. Generally, a complaint that gives notice of the circumstances giving rise to the plaintiff's claim for relief need not even correctly plead the legal theory or theories and statutory basis supporting the claim. *Marbury Management, Inc. v. Kohn*, 629 F. 2d. 705, 712 n.4 (2d Cir. 1980). Indeed, the rules of pleading do not require plaintiffs to cite to any statutory authority. *Crull v. GEM Insurance Co.* 58 F.3d

1386 (9th Cir. 1995) (holding that the pleading need not identify any particular legal theory under which recovery is sought); *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). Rather, the plaintiff must just set forth facts constituting a claim.

Here, Plaintiff has pled facts from which a discrimination claim can be inferred and she has even identified the statutes under which such claim exists and identified the nature of the claim. Specifically, the complaint identifies the statutes at issue and states:

> This is action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, New York Exec. Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, as amended, including The Local Civil Rights Restoration Act, effective October 3, 2005 as well as Local Laws 1, 34, 35, 36, 37, 38, and 40 of 2016 ("NYCHRL"), and other appropriate rules, regulations, statutes and ordinances. Specifically, ***Plaintiff brings claims for discrimination***, being subjected to hostile to a work environment, retaliation and unlawful termination.

Ex. 1 at ¶ 1 (emphasis added). Further, the complaint alleges numerous facts constituting discrimination on the basis of race and/or national origin. *See*, *Id*. at ¶ 22 (a-g). Lastly, the Complaint states that the reason for the Defendants' termination was pretextual. *See*, *Id*. at ¶ 27. As such, Defendants were on fair notice of the Plaintiff's discrimination claim. Defendants failure to raise any evidence denying or contradicting allegations relating to this claim means they must be taken as true. *See, Celestino v. Montauk Club*, 97 CV 3943 (CLP), 2000 U.S. Dist. LEXIS 21845, at *57-58 (E.D.N.Y. Mar. 12, 2000). As such, there is a genuine issue of material fact as to the Plaintiff's claim for discrimination[2]. *See, Id*.

Disparate treatment claims are subject to the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden of establishing a *prima*

[2] Even if the Defendants had opposed Plaintiff's claim for discrimination the Parties would end at the same point as the Defendants would claim a legitimate non-discriminatory reason for Ms. Schaper's termination and the Plaintiff would put forth facts evidencing the reasons were pretextual.

*facie* case "is so minimal that courts simply assume the existence of a prima facie case." *Ramos v. Marriott International, Inc.*, 134 F.Supp 2d 328, 338 (S.D.N.Y 2001). A *prima facie* case of disparate treatment requires a plaintiff to demonstrate (1) that she belonged to a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See, Holdomb v. Iona Coll.* 521 F.3d. 130, 138 (2d Cir. 2008).

The standard for proving discrimination is even less burdensome under the NYCHRL where, "to prevail on liability, the plaintiff need only show differential treatment-that she is treated less well-because of a discriminatory intent." *Mihalik v. Credit Agricole Cheavreux N. Am., Inc.*, 715 F.3d. 102, 110 (2d Cir. 2013). Once this low threshold is met, the only way to avoid liability is to prove that "the conduct amounted to no more than a petty slight." *Id*. at 111. However, the ***employer*** bears the burden of proof on this affirmative defense.

### A. Plaintiff is in a Protected Class

Here, it is beyond dispute that Ms. Schaper has made a *prima facie* case for discrimination. First, Defendants must concede she is a member of a protected class, a Hispanic woman. Pl.'s Counter Stmt. at ¶ 39. This clearly establishes that Ms. Schaper is in a protected class.

### B. Plaintiff Was Qualified for the PCT Position

She was also more than qualified for the PCT position. Under Second Circuit precedent, Ms. Schaper need only "establish basic eligibility for the position at issue" to show that she was qualified for the position she held. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d. 87, 92 (2d. Cir. 2011). Further, it is an "error to find that [the] plaintiff has not established a *prima facie* case merely because [the] employer was dissatisfied with [the] plaintiff's performance. *Chukwurah v. Stop & Shop Supermarket Co.,* 354 Fed. Appx. 492, 495-596 (2d Cir. 2009). In the case at bar Plaintiff has established her qualifications for the PCT Position. *See*, Pl.'s Counter Stmt. at ¶ 39.

**C. <u>Plaintiff Suffered Numerous Adverse Employment Actions</u>**

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of her employment." *Joseph v. Leavitt*, 465 F.3d. 87, 90 (2d Cir. 2006). Generally, adverse employment actions are considered "material" if they are "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Signer v. Tuffy*, 66 Fed. Appx. 232, 235 (2d Cir. 2003). The Supreme Court has noted, "[t]he phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment… in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Significantly, "there is no exhaustive list of what constitutes an adverse employment action." *Grana v. Potter*, No. 06-CV-1173 (JFB)(ARL), 2009 U.S. Dist. LEXIS 13159, at *43 (E.D.N.Y. Feb. 19, 2009). "Because there are no bright-line rules, courts must pour over each case to determine whether the challenged employment action reaches the level of adverse." *Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d. 426, 446 (2d. Cir. 1999). Here the evidence shows that Plaintiff suffered numerous adverse employment actions. First, Ms. Schaper's probation was extended leaving her more vulnerable to termination. Second, she was terminated from her position with BLH. *See*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("Examples of materially adverse changes include termination of employment…"). Lastly, as stated below, she was subject to a hostile work environment, which is an adverse employment action. *See*, *Salerno v. City Univ. of N.Y.*, 2003 U.S. Dist. LEXIS 16474, at *36 (S.D.N.Y. Sep. 16, 2003).

**D. <u>The Numerous Adverse Employment Actions Plaintiff Suffered Occurred Under Circumstances Giving Rise to an Inference of Discrimination</u>**

A full review of the record indicates that Ms. Schaper's termination occurred under circumstances giving rise to an inference of discrimination. To establish an inference of discrimination, a plaintiff must put forth some evidence "from which a rational fact finder could infer that [the employer's actions] were motivated by [the employee's protected class]." *Williams v. Palladia, Inc.*, No. 07 cv 7720 (CM), 2009 U.S. Dist. LEXIS 15516, at *21 (S.D.N.Y. Feb. 10, 2009). The standard used to establish an inference of discrimination is a "flexible [one] that can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores,* 975 F.Supp.2d. 244, 271 (E.D.N.Y. 2013). Indeed, "no one particular type of proof is required to show that [the adverse employment action] occurred under circumstances giving rise to an inference of discrimination." *Id*. Further, in determining whether an inference of discrimination exists, "'the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file' that their actions are motivated by factors expressly forbidden by law.'" *Quinby v. WestLB AG*, 2007 U.S. Dist. LEXIS 28657, at *15-16 (S.D.N.Y. Apr. 19, 2007) (citations omitted). Therefore, most plaintiffs must rely on circumstantial evidence. *See, Graham v. Long Island R.R.*, 230 F.3d. 34, 38 (2d. Cir. 2000). Circumstances that may give rise to such an inference include, but are not limited to: (1) criticism of the plaintiff's performance in [discriminatory] terms; (2) invidious comments about others in the [plaintiff's] protected group; (3) the more favorable treatment of employees not in the protected group; or (4) the sequence of events leading to the plaintiff's discharge. *Chambers v. TRM Ctrs. Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994) (internal citations omitted); *see also Ragin v. E. Ramapo Cent. Sch. Dist.*, 417 Fed. Appx. 81, 82 (2d Cir. 2011)(summary order).

Here, the person who actually terminated Ms. Schaper, Defendant Wilson, is well documented at making invidious comments about Hispanic women. Specifically, Defendant

Wilson singled out Hispanic women concerning the way they dressed, stressing that Hispanic women "always dress to show something" while indicating the breast and buttocks and referred to Hispanic women as "you people." Pl.'s Counter Stmt. at ¶¶ 54, 56. Evidence that Defendant Wilson made these comments, even where uncorroborated, is enough to support a finding that the termination was motivated by discriminatory animus. *See*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d. 107, 124 (2d Cir. 2004); *see also Rose v. New York City Bd. of Edu.*, 257 F.3d. 156, 162 (2d. Cir. 2011) (discriminatory comments of individual who "had enormous influence in the decision making process," constituted direct evidence).

Moreover, Defendants act more favorably to employees outside of Plaintiff's protected group. Ms. Schaper has alleged that Defendant Wilson especially disfavored Hispanics, that this disparate treatment adversely affected her employment, that Plaintiff routinely complained of same, and that Defendant BLH did nothing about her complaints. *See generally*, Pl.'s Counter Stmt.

Lastly, the sequence of events leading to Ms. Schaper's discharge give rise to an inference of discrimination. For all intents and purposes Ms. Schaper was an excellent employee. Pl.'s Counter Stmt. at ¶¶ 40; 42-49. She did everything she could to improve herself so that she could move up within BLH, going so far as to go to school to earn a diploma while working at the same time. *Id.* at ¶ 46. After becoming at PCT she routinely changed diapers, never avoiding this or complaining about it. *Id.* at ¶ 49. When she was ordered by a doctor to do a stat EKG, she did what she was ordered, and explained what was going on to the patient's daughter. *Id.* at ¶ 16; 17; 21.. As soon as she had carried out the doctor's orders, she went back to check on the patient. *Id.* at ¶ 21. But, by then, the patient had already been changed. *Id.* Defendant Wilson then spoke to the patient's daughter and she filed a complaint against Ms. Schaper. Defs. Stmt. of Matl Facts.

at ¶ 21. Ms. Wilson then delayed the July 31, 2015 meeting, which was purportedly to make factual determinations, for over ***two weeks***, making it impossible to corroborate whether Ms. Schaper had to do an EKG at the same time as the request to clean the soiled patient. Pl.'s Stmt of Matl Facts at ¶¶ 17; 24. Although the letter of complaint plainly said that Schaper had to do an EKG first, the Defendants failed to investigate this at all, let alone in a timely manner. *Id.* at ¶ 17(vii)-(xviii); 24(vi). Defendants then took the word of someone with a discriminatory animus against Hispanics that ***Ms. Schaper*** was acting in a discriminatory manner by only attending to Hispanic patients. *Id.* at ¶ 24; 26. They also failed to investigate this allegation. *Id.* She was then terminated for insubordination, inappropriate employee behavior and rendering substandard performance affecting patient care, even though none of the foregoing would normally result in termination, particularly for an employee with no history of behavioral or performance issues. *Id.* at ¶ 31-32. In fact, after this incident occurred, Defendant Wilson ordered Nurse Praddy, a black woman, to write down what happened and Nurse Praddy outright refused, committing an act of clear insubordination. *Id.* at ¶ 32(v). Nurse Praddy was never disciplined for this. *Id.* Since termination is not normally considered for these infractions, Plaintiff did not know it was being considered as a punishment until she was so informed on August 11, 2015. *Id.* at ¶ 33. Moreover, since her termination, BLH management have stated that Ms. Schaper should not have been terminated. *Id.* at ¶¶ 63-65. Not only did Defendants disregard their normal procedure of progressive discipline; they made no effort to investigate Schaper's claim that she was directed to do a stat EKG or to investigate the accusation that she had ignored all the black patients on her shift. These circumstances are more than sufficient to give rise to an inference of discrimination. *See*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000) (an employer's "departures from procedural regularity… can raise a question as to the good faith of the process" and, thus, raise an

inference of discriminatory intent). Therefore Ms. Schaper has established a *prima facie* case of discrimination.

**E. <u>Defendants' Proffered Justification for Ms. Schaper's Termination Is Pretextual</u>**

Even when an employer proffers a supposedly legitimate reason for a termination, a plaintiff can nevertheless prevail if she presents evidence that the reason is a pretext masking discrimination. *Sacks v. Gandhi Eng'g, Inc.*, 999 F.Supp. 2d 629, 643 (S.D.N.Y. 2014). "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision," but on that the protected class "was at least one of the motivating factors." *Id*. The burden to establish pretext "is not particularly stringent." *Holmes v. Brentwood Union*, No. CV-03-1084 (TCP)(AKT), 2006 U.S. Dist. LEXIS 41081, at *14 (E.D.N.Y. May 25, 2006). A plaintiff can establish pretext when she can "draw into question" the credibility of the defendant's reason. *Collins v. Cohen Potani*, No. 04 CV 8983(KMW)(MHD), 2008 U.S. Dist. LEXIS 58047, at *65 (S.D.N.Y. July 30, 2008). Under the CHRL, summary judgment must be denied where there is "some evidence that at least one of the [non-discriminatory] reasons proffered by defendant is false, misleading or incomplete." *Bennett v. Health Mgmt. Sys. Inc.*, 92 A.D.3d 29, 43-44 (1st Dept. 2011). Here, Defendants' claim that Plaintiff's termination was justified is obviously pretextual. Not only did they fail to fully investigate the circumstances surrounding the July 7, 2015 incident, but the proffered reasons for Ms. Schaper's termination are not supported in the record. Stemming from the July 7, 2015 incident, Defendants cited three reasons for Ms. Schaper's termination:

> a. Insubordination- failure to carry out the instructions of the Registered Nurse under whose jurisdiction she works.

> b. Employee Behavior- Employees must interact professionally, courteously and appropriately, with patients, visitors and other employees. Employees must behave in a manner consistent with and furthering a positive perception of BLHC and its employees.
>
> c. Exercising substandard performance in work responsibilities, which has a negative impact on patient care and/or hospital services. Failure to render assistance or care to a Patient.

Defs. Stmt. at ¶ 31. However, the stated reasons are teeming with discriminatory pretext. Firstly, the record does not show that the Plaintiff was insubordinate. *Id.* at ¶¶ 16-18; 21; 23; 24. She was ordered by Dr. Mukherjee to do a stat EKG, and then she was directed to take that patient to the Code Room. *Id.*. She followed that order and then went back to check on her patient in question. *Id.* Even if Point "18" of Defendants' Rule 56.1 Statement were undisputed, which it is not, it does not say that Nurse Praddy ***directed*** or ***ordered*** the Plaintiff to do anything; it merely recites a warning that the complainant might go to their supervisor. *See*, Defs. Stmt of Matl. Facts at ¶ 18; Pl.'s Stmt of Matl Facts at ¶18. Throughout her time with the patient in question she rendered standard care, moving the patient away from a noisy psychiatric patient, and even provided a blanket to the complainant's mother. Pl.'s Stmt of Matl Facts at ¶¶ 21; 29. Moreover, the Defendants obviously failed to review Harris' complaint fully. Harris' mother was admitted into the hospital at 8:30PM at the latest, while Ms. Schaper did not even go on duty until midnight, at least three and a half hours later. *Id.* at ¶ 24(x). However, the complaint blames Ms. Schaper for neglect that occurred ***before*** she was even on duty. *Id.* at ¶ 24. Next, the complaint was only written after the complainant spoke to Defendant Wilson, who Ms. Schaper has complained of herself. *Id.* at ¶ 36(ii) –(vii); Defs Stmt of Matl Facts at ¶ 21. Specifically, Ms. Schaper had complained to Mairead O'Regan and Tony Ramgahan, respectively the Director and Assistant Director of Nursing, over the course of several months, about Defendant Wilson's behavior

concerning her treatment of Hispanics. Pl.'s Stmt of Matl Facts at ¶¶ 36(ii) –(vii). Also, the record is clear that under normal circumstances that even if Ms. Schaper were insubordinate, that would not warrant termination, it would instead warrant "progressive discipline". *Id.* at ¶ 32. Next, the Defendants have conceded that termination was not the correct remedy for the infraction that has occurred. *Id.* at ¶ 61-65. Lastly, it must be noted that the actual termination decision was not made by the Director of Labor Relations but was made by Defendant Wilson. *Id.* at ¶ 12. Not only did she send an email accusing Ms. Schaper of racism to BLH but she made the final decision as to Ms. Schaper's termination. *Id.* at ¶¶ 12; 24(iii); 26(i); *Richardson-Holness v. Alexander*, 196 F. Supp. 3d 364, 371 (E.D.N.Y. 2016) ("[E]mployment decisions that are made collectively can be tainted by the bias of a single biased individual so long as the biased party played a 'meaningful role' in the decision making process."). Here, the employment decision to terminate Ms. Schaper was tainted by Defendant Wilson who played more than a meaningful role in Plaintiff's termination. *See generally*, Pl.'s Counter Stmt.

There is no question that Ms. Schaper has established both her *prima facie* case of disparate treatment and raised a triable issue of fact as to whether Defendants' stated justification for the termination is pretextual. Accordingly, Defendants motion for summary judgment must be denied.

## PLAINTIFF HAS ESTABLISHED VIABLE CLAIMS OF HOSTILE WORK ENVIRONMENT

In order to establish a hostile work environment under the SHRL and Title VII a plaintiff must demonstrate: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her environment; and (2) that a basis exists for imputing the conduct that created the hostile work environment to the employer[3].

[3] Defendants do not argue there is no basis for imputing the conduct of Defendant Wilson to Defendant BLH. However, since Defendant Wilson was Ms. Schaper's supervisor was responsible for the discriminatory and harassing actions,

*Sclafani v. P.C. Richard & Son*, 668 F.Supp. 2s 423 (E.D.N.Y. 2009). "The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000). Indeed, the work environment does not need to be deemed "unendurable" or "intolerable" in order to be deemed "hostile," and the Second Circuit has "repeatedly cautioned against setting the bar too high." *Id*.

On a motion for summary judgment, the question for the court is simply whether a reasonable fact-finder could conclude, considering all the circumstances, "that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id*. Even where multiple actions taken by an employer are not individually sufficient to create a hostile working environment, "an accumulation of seemingly minor incidents" may combine to satisfy the standard. *See*, *Phillps v. Bowen*, 278 F.3d. 103, 109 (2d. Cir. 2002). In their motion, Defendants attempt to characterize Ms. Schaper's work environment as "episodic" by describing them piecemeal. However, in evaluating the claim, Courts examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012).

In the case at bar, over a six month period Defendant Wilson subjected Ms. Schaper to a hostile work environment. Defendant Wilson singled out Hispanic women concerning the way they dressed, stressing that Hispanic women "always dress to show something" while indicating the breast and buttocks area while leaving other employees to dress as they pleased. Pl.'s Counter

---

the requirement that these actions be imputed to BLH is satisfied. *See, Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013).

Stmt. at ¶ 14(iii); 54. This includes, comments stating that Hispanic women only get where they are because they dress to show their breasts and where tight clothes around their backsides, while pointing at her own buttocks area. *Id*. And standing behind Plaintiff while she was bent over changing a bed, and asking her why "you people" always have clothes on your backsides so tight. *Id* at ¶ 36(vi); 54; 56. Comments on how Plaintiff's and another female Hispanic PCT's uniforms were too tight in the breast and buttocks area, as well how Hispanic women dressed generally, were made on at least 5 or 6 occasions. *Id*. at ¶ 53. On repeated occasions, when Plaintiff was in the middle of attending a patient and Wilson told her to do something, she would normally respond to the effect of OK, just give me a second to finish this. Wilson made references to "you people" to Plaintiff and/or to another Hispanic on approximately 10 occasions. *Id.* at ¶ 56. Defendant Wilson also singled out Hispanics by admonishing Ms. Schaper and other Hispanics from speaking Spanish during breaks and whenever she heard it. *Id*. at ¶ 15; 57. Wilson went so far as to reprimand Ms. Schaper for speaking Spanish to a Spanish speaking patient. *Id*. at ¶ 57. She also sarcastically mimicked Ms. Schaper if she heard Ms. Schaper speaking in Spanish during her breaks. *Id*. at ¶ 36; 58. Wilson went so far as to threaten Plaintiff that she would be fired if she refused to watch multiple one on one patients at the same time, which was clearly unsafe, as well as a violation of Hospital protocol. *Id*. at ¶ 59. Defendant Wilson also frequently removed Ms. Schaper and other Hispanic employees from their assigned posts, to cover other assignments, leaving the original posts vacant. *Id*. at ¶ 60. For example, Defendant Wilson once removed Ms. Schaper from a one on one patient to run an errand for Defendant Wilson stating that she (Defendant Wilson) would stay with the patent. *Id*. When Ms. Schaper returned from running the errand, she found the one on one patient without any supervision. *Id.* This clearly put Plaintiff in a position where she could be fired for leaving a one on one patient unattended. More significantly,

Defendant Wilson also required Hispanic Workers, including Ms. Schaper, to perform jobs designed to be covered by at least two people alone. *Id*. This includes attending to more than one psychiatric and intoxicated patient by herself. By the admission of the Director of Nursing in the Emergency Department, this put both patient and employee safety at risk. *Id*. To compound this unnecessary safety hazard, Wilson specifically told the Plaintiff that she would be fired if she refused to cover any one on one patient by herself. *Id.* These blatant exhibitions by Defendant Wilson demonstrate her discriminatory animus and were humiliating, unreasonably interfered with Ms. Schaper's work performance and were physically threatening.

Adding insult to injury, Plaintiff's pleas for help were repeatedly and purposefully ignored by Defendants. *Id*. at ¶ 36. When viewed cumulatively, the frequency and severity of the harassment was such that it materially altered Ms. Schaper's work environment for the worse. Clearly, Ms. Schaper's workplace was permeated with precisely the type of ridicule, insults, and behavior that SHRL and Title VII were meant to prevent. *See, Pucino v. Verizon Wireless Comm., Inc.*, 618 F.3d 112 (2d Cir. 2010) (finding that employer's failure to provide plaintiffs necessary equipment and perks afforded to their male counterparts sufficient to raise an issue of fact as to gender animus). In fact, after Ms. Schaper was terminated and others came forward with claims of discrimination against Defendant Wilson, she was put on a Personal Improvement Plan due to these issues. Pl.'s Counter Stmt. at ¶¶ 80-89.

**A. <u>Plaintiff Has Satisfied Her More Lenient Burden Under The New York City Human Rights Law</u>**

Finally, it should be noted that the Second Circuit has cautioned that because the issue of harassment in a hostile work environment is a "mixed question of law and fact," it is "especially well-suited for jury determination." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (quoting *Richardson* at 439); *See also, Patterson v. Cnty. of Oneida, New York*, 375

F.3d 206, 227 (2d Cir. 2004) ("Where reasonable jurors could disagree as to whether alleged incidents of ... harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law"). To state a claim for hostile work environment under the CHRL, Plaintiff must merely show "differential treatment – that she is treated less well – because of a discriminatory intent." *Pryor v. Jaffe & Asher, LLP.*, 992 F.Supp.2d 252, 257 (S.D.N.Y 2014). Under this more liberal standard, "even a single comment… can be actionable." *Mihalik*, at 111. As discussed at length herein and above, the record is replete with more than enough evidence of disproportionate and unfavorable treatment premised on Ms. Schaper's status as a Hispanic woman. Accordingly, Plaintiff has, at a minimum, raised an issue of fact as to her hostile work environment claims under the CHRL.

## **PLAINTIFF HAS ESTABLISHED A VIABLE CLAIM OF RETALIATION**

Defendants argue that Plaintiff cannot sustain her claims of retaliation because (i) the adverse action occurred before the protected activity and (ii) Defendants have a legitimate non-discriminatory reason for their termination of their termination of the Ms. Schaper. Once again, Defendants ignore the evidence and highlight a minimum amount of facts to support their application to dismiss Ms. Schaper's claims. Similar to Plaintiff's claims for discrimination, a full and fair reading of the record raises, at a minimum, disputed material issues of fact to be determined by the fact finder which preclude summary judgment.

Retaliation claims under Title VII and the NYSHRL are subject to the framework articulated under *McDonnell Douglas*. A plaintiff must establish a *prima facie* case retaliation by showing that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a casual connection exists

between the alleged adverse action and the protected activity. *Summa v. Hofstra*, 708 F.3d. 115, 125 (2d Cir. 2013).

### A. **<u>Plaintiff Engaged In Protected Activity</u>**

A protected activity consists of an "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). "[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection," and that "making complaints to management" constitutes a protected activity. *Id*. (internal quotation marks and citation omitted). Furthermore, "[a] plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (internal citation omitted).

Here, the record is replete with protected activity. Looking at the record completely, the Plaintiff was working her way up the corporate ladder making complaints about Defendant Wilson's behavior to the Assistant Nurse Manage and the Nurse Manager and making her way to the Director of Labor Relations. Pl.'s Counter Stmt. at ¶ 36, 35. These complaints constitute protected activity as they complained about how Defendant Wilson treated Hispanics differently than other employees, including Ms. Schaper. This would include, but are not limited to, putting patients and Ms. Schaper's safety at risk by requiring Ms. Schaper to watch multiple one on one patients, Defendant Wilson referring to Hispanics as "you people"; Defendant Wilson ordering Ms. Schaper to leave a one on one patient alone to do something else, stating that she (Defendant Wilson) would look after the patient and when Ms. Schaper returned Defendant Wilson was nowhere to be found and the patient had been left alone; Defendant Wilson stating that Hispanic

women get where they are by dressing with their breasts showing and stating that they where tight pants to show off their backsides; and stopping Ms. Schaper from speaking Spanish to a ***Spanish speaking*** patient. Pl.'s Counter Stmt. at ¶ 36. Each of the verbal complaints about Defendant Wilson took place between March 9, 2015 and July 7, 2015. Pl.'s Counter Stmt. at ¶¶ 6, 36. On August 3, 2015, Ms. Schaper made a discrimination complaint against Carol Wilson to BLH's Labor Relations. Pl.'s Counter Stmt. at ¶ 35. On October 21, 2015 and April 13, 2016 Ms. Schaper filed a timely charge with the U.S. E.E.O.C. *Id.* at ¶¶ 37; 70. Each of these complaints are protected activity under the law. *See*, *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (Title VII does not require a formal complaint.); *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that 'informal complaints to supervisors constitute protected activity under Title VII.'") (citations omitted); *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 237 (E.D.N.Y. 2010) ("Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation if for no other reason than . . . [w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." (alterations in original).

**B. <u>Defendants Were Aware of the Protected Activity</u>**

An employer is aware of a protected activity when it "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri—Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d at 292. "Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011). "'Neither this nor any other circuit has ever held that,

to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" *Id*.

In the case at bar, Plaintiff has satisfied this requirement by making verbal complaints to two different supervisors within the hospital, the Assistant Nurse manager and the Nurse Manager. She also properly filed a charge with the EEOC and filed her complaint with this Court. *See*, *Joseph v. Owens & Minor Distribution,* 5 F. Supp. 3d 295, 318 (E.D.N.Y. 2014) (Defendants aware of complaint where Plaintiff told two managers); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 362 (S.D.N.Y. 2006).

**C. <u>Defendants Took Numerous Adverse Employment Actions Against Ms. Schaper</u>**

Ms. Schaper was subject to numerous instances of adverse employment actions by the Defendants. First, after the numerous verbal complaints about Defendant Wilson's conduct, Defendant Wilson spoke to a patient's daughter and asked her to write a letter of complaint against Ms. Schaper. The letter of complaint made what were clearly false accusations against Ms. Schaper, which lead to her termination. Defs. Stmt. of Matl. Facts at ¶ 21; *See, Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) ("While negative employment evaluation letters[] or reprimands may be considered adverse employment actions," that is not the case where there is "no proof that [the] evaluation had any effect on the terms and conditions of [the plaintiff's] employment." (citations and internal quotation marks omitted)); *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582, 2012 U.S. Dist. LEXIS 170917, at *21 (E.D.N.Y. Nov. 30, 2012) (negative performance evaluation that triggers negative consequences to the conditions of employment is an adverse employment action). Second, Ms. Schaper was terminated in retaliation for engaging in the protected activity on August 11, 2015. Pl.'s Counter Stmt. at ¶ 33; *See*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d at 85 ("Examples of materially adverse changes include termination of employment…"). Third, Ms. Schaper was subject to a hostile work environment

by Defendant Wilson. *See, generally* Pl.'s Counter Stmt.; *See*, *Salerno v. City Univ. of N.Y.*, 2003 U.S. Dist. LEXIS 16474, at *36. Fourth, the Defendants blacklisted Ms. Schaper and refused to allow a doctor she had worked closely with to write a letter of recommendation for her so that she could find work at a hospital in the future. Pl.'s Counter Stmt. at ¶ 70-79; *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2d Cir. 2005); *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) ("Charges of post-employment blacklisting fall within the broad scope of Title VII."), *rev'd on other grounds*, 447 U.S. 807, 100 S. Ct. 2486, 65 L. Ed. 2d 532 (1980); *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (holding that an employer's refusal to give employee a letter of recommendation is sufficient to state a cause of action for retaliation); *see also Sarno v. Douglas Elliman-Gibbons & Ives*, 183 F.3d 155, 160 (2d Cir. 1999); *DeLuca v. Allied Domecq Quick Service Restaurants*, No. 03-CV-5142 (JFB), 2006 U.S. Dist. LEXIS 39261, at *34 (E.D.N.Y. June 13, 2006).

### D. A Casual Connection Exists Between the Adverse Actions and the Protected Activities

A casual connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). In the case at bar, Ms. Schaper has shown a causal connection between the protected activity and the adverse employment actions.

Ms. Schaper began working under Defendant Wilson two weeks after she was promoted to the PCT position on March 9, 2015. Between her promotion and July 7, 2015, a period of four months, Ms. Schaper made at least 7 verbal complaints about the way Defendant Wilson treated her and other Hispanic employees to Defendant Wilson's supervisors, working her way up the

hierarchy at BLH. Pl.'s Counter Stmt. at ¶ 36. This caused Defendant Wilson to subject Ms. Schaper to an ever more hostile work environment putting Ms. Schaper and BLH patients' safety at risk. *Id*. at ¶ 53-60. On July 7, 2018, Defendant Wilson took advantage of a distraught patient's daughter and asked her to write a complaint about Ms. Schaper. *See*, Defs' Stmt of Matl Facts at 21. The complaint blames Ms. Schaper for activities that occurred while she was not even on duty and specifically states that Ms. Schaper had to do an EKG at the time of the request. Pl.'s Counter Stmt. at ¶¶ 21,23,24. Defendant Wilson forwarded the letter of complaint with a covering email to the Director of Labor Relations accusing Plaintiff of racism. *Id*. at ¶¶ 24(iii); 26(iv). Failure to promptly advise Plaintiff of the gravity of these accusations deprived Schaper of the opportunity to prove that she had actually had to do a stat EKG at the time of the diaper change request. *Id*. at ¶¶ 16,17,18,33. A meeting was held on July 31, 2015, where Wilson showed no interest in hearing Plaintiff's version. *Id*. at ¶ 27. Given all these circumstances, on August 3, 2015, Ms. Schaper complained of Defendant Wilson's discriminatory conduct to Labor Relations. *Id*. at ¶ 66. ***Eight days*** later, on August 11, 2015, Ms. Schaper was terminated from BLH. *Id*. at ¶ 33.

Due to the discriminatory nature of her treatment, Ms. Schaper then timely filed a charge with the EEOC on October 21, 2015 and April 13, 2016. *Id*. at ¶ 37, 70. In order to help mitigate her damages, Ms. Schaper attempted to find similar work at other hospitals in New York City and asked a Doctor from BLH for a letter of recommendation. *See*, *Id*. at ¶ 71. The doctor wrote the letter of recommendation for Ms. Schaper on or about October 13, 2016, specifically complimenting her professionalism and excellence in her performance as a PCT. *Id*. Knowing that Ms. Schaper was represented by counsel, the doctor asked his superiors if he was allowed to write this letter of recommendation for Ms. Schaper. *Id*. at ¶ 72-75. BLH subsequently forbade the doctor from writing any letters of recommendation for Ms. Schaper. *Id*. at ¶ 76-78. Refusing

to put their reasons in writing, BLH's supervisors went on to state that they would explain to the doctor "in person." *Id*. at ¶ 76. The doctor then confirmed to another BLH employee that he was "not allowed to write" the letter of recommendation for Ms. Schaper. *Id*. at ¶ 78.

Given the above, there is a causal connection between the verbal complaints which occurred over five months between late March 2015 and July 7, 2015 and the hostile work environment. There is also a causal connection between Ms. Schaper's verbal complaints and Defendant Wilson requesting a patient's daughter to write a complaint against Ms. Schaper which lead to her termination. *See Espinal v. Goord*, 558 F.3d. 119, 129 (2d Cir. 2009) (six-month temporal gap between protected activity and adverse action sufficient for finding causal connection). There is also a causal connection between Ms. Schaper's complaints, both verbal and formal, and her eventual termination. The time period between the Plaintiff's last verbal complaint, early June, and the beginning of the period where Ms. Wilson decided that she should be terminated was only about a month, while the time period between her formal complaint to labor relations and her termination is eight days. *See, Id*.; *Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 193 (E.D.N.Y. 2008) (finding a causal connection between plaintiff's protected activity and subsequent termination even where suggestion to terminate plaintiff occurred ***before*** EEOC complaint was submitted). Final approval of the firing decision rested with Jasen Nhambiu, who could only say that he made the final decision at some time during the interval between July 31, and August 11, 2015, where the labor relations complaint was made on August 3. Pl.'s Counter Stmt at ¶¶ 12; 66; 68. Finally, a causal connection exists between the filing of Ms. Schaper's filing of her EEOC charge and BLH not allowing a doctor to write a laudatory letter of recommendation for Ms. Schaper. Approximately six months elapsed between Ms. Schaper filing her EEOC charge and a BLH doctor first agreeing and then disagreeing to writing a letter of recommendation for

her. *See*, *Summa v. Hofstra Univ.*, 708 F.3d at 128 (seven-month temporal gap between protected activity and adverse action sufficient for finding causal connection).

**E. <u>Defendants Proffered Reasons for the Employment Actions are Pretextual</u>**

Even where an employer proffers a supposedly legitimate reasons for the employment actions, a plaintiff can nevertheless prevail if she presents evidence that the reason is a pretext masking retaliation. *See, Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1181 (2d Cir. 1996). To establish pretext, "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Here, as discussed more fully above, in relation to Plaintiff's claim for discrimination and her *prima facie* claim for retaliation, Ms. Schaper can establish that there is at least a genuine issue as to whether Defendants' proffered reasons for her termination were pretextual. Regarding the other employment actions made by Defendants, they have not and cannot argue that Defendant Wilson's bias or retaliatory intent was not the cause in asking the patient's daughter file a complaint against Ms. Schaper. Nor have Defendants argued that Ms. Schaper deserved to be subject to the hostile work environment to which she was subject because she made verbal complaints to Defendant Wilson's superiors. Lastly, Defendants have not put forth any evidence concerning a legitimate non-retaliatory reason why they refused to allow a doctor to write a recommendation letter for Ms. Schaper so she could move forward after her termination.

**F. <u>Plaintiff Has Carried Her Lesser Burden Under the NYCHRL</u>**

A plaintiff asserting claims under the CHRL "need not show that [s]he suffered a materially adverse action." *Davis v. Metro. Transp. Auth.*, 2012 U.S. Dist. LEXIS 30761, at *29 (S.D.N.Y. Mar. 6, 2012). Rather, under the CHRL, a plaintiff need only show that "she took an action opposing her employer's discrimination, and… the employer engaged in conduct that was

reasonably likely to deter a person from engaging in such action." *Mihalik* at 112. Moreover, a plaintiff need only show that the retaliation was a ***motivating factor*** in the adverse employment action. *See*, *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 248 (E.D.N.Y. 2014) (collecting cases). In viewing the facts most favorable to the Plaintiff, a reasonable jury could find that Ms. Schaper's multiple complaints were the cause of the Defendants' adverse employment actions.

## **PLAINTIFF HAS ESTABLISHED A VIABLE CLAIM FOR AIDING AND ABETTING DISCRIMINATION AND EMPLOYER LIABILITY**

While Defendants state in their notice that they wish to dismiss the Plaintiff's complaint in its entirety, they do not articulate any factual issues not in dispute with respect to Ms. Schaper's claim for aiding and abetting under the CHRL. Nor do they articulate any factual issues not in dispute concerning BLH liability under the CHRL. Defendants' failure to raise any evidence denying or contradicting allegations relating to these claims means they must be taken as true. *See, Celestino v. Montauk Club*, 97 CV 3943 (CLP), 2000 U.S. Dist. LEXIS 21845, at *57-58. As such, there is a genuine issue of material fact as to the Plaintiff's claim for aiding and abetting discrimination. *See, Id*. Moreover, since it has been established that Defendant Wilson participated in the conduct giving rise to the discrimination claim, she is liable under the CHRL. *See, Lyman v. N.Y. & Presbyterian Hosp.*, 2014 U.S. Dist. LEXIS 95492, at *61-62 (S.D.N.Y. July 14, 2014). Moreover, where a supervisor commits the discriminatory action under the CHRL the corporate employer is strictly liable under the CHRL. *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479-80 (N.Y 2010) (Holding the NYCHRL imposes liability on an employer where the offending employee was a manager or supervisor).

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion for summary judgment in its entirety.

Dated: New York, New York
January 7, 2019

**LAW OFFICES OF WILLIAM CAFARO**

/s/ William Cafaro

William Cafaro, Esq. (WC 2730)
*Attorneys for the Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
Tel: (212) 583-7400
Fax: (212) 583-7401
E-mail:BCafaro@CafaroEsq.com