USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDITH SCHAPER,

Plaintiff,

-against-

THE BRONX LEBANON HOSPITAL
CENTER and CAROL WILSON,

Defendants.

1:17-cv-01246 (ALC)

<u>OPINION AND ORDER</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Judith Schaper ("Plaintiff") brings this action against Defendants the Bronx Lebanon Hospital Center ("BLHC") and Carol Wilson (collectively, the "Defendants"), alleging claims of retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1] Compl., ECF No. 1. Before the Court is Defendants' Motion for Summary Judgment. ECF No. 62. After careful consideration, Defendants' Motion is hereby **DENIED**.

---

[1] Plaintiff's opposition to the motion for summary judgement adds discrimination claims of disparate treatment under Title VII, NYSHRL and NYCHRL. Although Plaintiff's Second Cause of Action is characterized as a discrimination claim under Title VII, it cannot be construed as a claim of disparate treatment because it is limited to a claim of hostile work environment. *See* Compl. At 9. ("Defendants have discriminated against the Plaintiff due to her race by subjecting Plaintiff to a hostile work environment."). The Complaint otherwise does not include claims of disparate treatment and accordingly, the court will not address these discrimination claims. *See Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (citations omitted) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim. Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."). However, Plaintiff may request leave to amend her Complaint.

# BACKGROUND

Plaintiff Judith Schaper is a Hispanic American female of Puerto Rican and Dominican descent. Affidavit of Judith Schaper ("Schaper Aff.") ¶ 7, ECF No. 70. On May 6, 2013, she began working for BLHC as a patient transport aid. Pl's. Resp. to Def.'s R. 56.1 Stmt., ECF No. 73, ¶ 3 [hereinafter "Pl.'s R. 56.1 Stmt."]. On March 7, 2015, Plaintiff was promoted to the position of Patient Care Technician ("PCT"). Schaper Aff. ¶ 5. In this new PCT role, Defendant Wilson, who then served as a Patient Care Manager ("PCM"), directly supervised Plaintiff. Compl. ¶ 20; Pl.'s Ex. 4, Schaper Dep., ECF No. 81 at 32–35 [hereinafter "Schaper Dep."]. Defendant Wilson is a Jamaican American female. Compl. ¶ 21; Schaper Aff. ¶ 9.

During the course of Plaintiff's employment as a PCT, Plaintiff alleges Defendant Wilson made numerous comments towards her and other Hispanic employees including: referring to Plaintiff and other Hispanic female employees as "you people;" referring to Hispanics as "always having to dress to show something;" making inappropriate comments about Plaintiff and other Hispanic female employees' bodies and attire; mimicking Plaintiff and other Hispanic employees speaking Spanish; reprimanding Plaintiff and other Hispanic employees for speaking Spanish while on duty; threatening Plaintiff's employment; and on one occasion, physically intimidating Plaintiff. Compl. ¶ 22; Schaper Aff. at ¶¶ 11–29; Schaper Dep. at 53–55. In addition, Plaintiff alleges Defendant Wilson often assigned Hispanic employees, including Plaintiff, to cover multiple one-on-one assignments in violation of hospital policy. Compl. ¶ 22; Schaper Aff. at ¶¶ 11, 13, 15–16. Plaintiff further alleges Defendant Wilson moved Plaintiff and other Hispanic PCTs to other PCTs' assignments, leaving posts initially assigned to Hispanic employees as vacant and consequently placing their employment at risk. Compl. ¶ 22; Schaper Aff. at ¶ 15.

On approximately seven occasions, between March 2015 and July of 2015, Plaintiff complained informally to other hospital supervisors, namely Gagandra Ramgahan and Mairead O'Regan, who at the time Plaintiff was terminated served as the Assistant Director for Nursing and the Director of the Emergency Department respectively. Pl's. R. 56.1 Stmt. ¶¶ 10–11; Schaper Aff. at ¶¶ 12, 14, 16, 18, 20, 26, 27. More specifically, Mr. Ramgahan served as Defendant Wilson's supervisor and Ms. O'Regan served as Mr. Ramgahan's supervisor. Pl's. R. 56.1 Stmt. ¶¶ 10–11. Plaintiff informed Mr. Ramgahan and Ms. O'Regan about Defendant Wilson assigning her to multiple one-on-one patients alone, making comments about Hispanic women's attire, and reprimanding her for speaking Spanish with patients and or other employees. Schaper Aff. at ¶¶ 12, 14, 16, 18, 20, 26, 27.

On July 7, 2015, a black BLHC patient's daughter asked Plaintiff to change the diaper of her mother, the patient, because she had soiled herself. *Id.* at ¶ 34. Around the same time, Dr. Mukherjee, an emergency room doctor, asked Plaintiff to urgently assist him with administering an EKG on another patient. *Id.* at ¶ 33–34. Plaintiff ultimately did not assist with changing the patient's diaper. *Id.* at ¶ 39. As a result, Defendant Wilson asked the patient's daughter to write a statement about the incident. Pl.'s Ex. 8, Deposition of Carol Wilson at 118 [hereinafter "Wilson Dep."]. Accordingly, that day the patient's daughter filed a formal, written complaint against Plaintiff. Pl.'s R. 56.1 Stmt. ¶ 22. Defendant Wilson, subsequently, reported the incident to supervisors, Ms. Ramgahan and Ms. O'Regan, and the Director of Labor Relations, Jasen Nhambiu. *Id.* ¶ 25. On July 31, 2015, Mr. Nhambiu conducted a fact-finding hearing to investigate the incident. *Id.* ¶ 27. On August 3, 2015, in accordance with the Hospital's Discrimination Complaints Policy, Plaintiff filed a formal written complaint against Defendant

Wilson. Pl.'s R. 56.1 Stmt. ¶ 35. BLHC terminated Plaintiff on August 11, 2015, finding that she violated the hospital's code of conduct. Pl.'s R. 56.1 Stmt. ¶ 22. One of the violations consisted of insubordination, which carries a potential penalty of termination. Schaper Aff. ¶ 46; Pl.'s R. 56.1 Stmt. ¶ 31. In general, BLHC did not terminate employees for insubordination. Wilson Dep. at 93. Additionally, BLHC had a policy of instituting progressive forms of punishment. Pl.'s Ex. 9, Deposition of Margaret O'Regan at 96.

Following Plaintiff's termination, she asked Dr. Mukherjee to draft a letter of recommendation. Pl.'s Ex. 29; Def's. R. 56.1 Stmt. ¶¶ 71–79. Subsequently, Dr. Mukherjee drafted said letter, but on October 12, 2019, before sending it to Plaintiff, he emailed his supervisor Mr. John Coffey to request permission. *Id.* In the email, Dr. Mukherjee indicated the letter was to be sent to Plaintiff's attorney. Pl.'s Ex. 28. Although, Mr. Coffey initially granted permission, he later stated he would like to discuss the matter further, stating he would like to "more fully understand the implications" and that he had previously "skipped the legal twist." *Id.* Ultimately, Dr. Mukherjee declined to send Plaintiff the letter of recommendation. Pl.'s Ex 12, Deposition of Mukherjee at 47– 50; Def's. R. 56.1 Stmt. ¶¶ 71–79. On October 21, 2015 and April 13, 2016, Plaintiff filed charges of discrimination, hostile work environment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") against Defendants BLHC and Wilson. Pl.'s Ex. 22.

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). There is no issue of

4

material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252). In discrimination cases,

> summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. . . .There must either be a lack of evidence in support of the plaintiff's position, . . . or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error.

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (footnote and citations omitted). *See also Risco v. McHugh*, 868 F. Supp. 2d 75, 98 (S.D.N.Y. 2012).

# DISCUSSION

## I.   Retaliation

### A. Claims Against BLHC

Plaintiff brings claims against Defendant BLHC pursuant to Title VII, NYSHRL and NYCHRL. Under Title VII and NYSHRL, retaliation claims are reviewed under the burden-shifting approach promulgated by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–04 (1973). *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "The plaintiff's burden in this regard is '*de minimis*,' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 at 173)).

"Once the plaintiff has established a *prima facie* showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Kwan*, 737 F.3d at 845. After the defendant does so, the presumption of retaliation arising from the establishment of the *prima facie* case vanishes, and the onus is then on the plaintiff to establish that the defendant's proffered reason(s) are pretextual. *Kwan*, 737 F.3d at 845. The plaintiff must demonstrate that "retaliation was a 'but-for' cause of the adverse action, and not

simply a 'substantial' or 'motivating' factor in the employer's decision.' . . . [However t]his but-for reason need not be the only cause for the employer's action." *D'Andrea v. Nielsen*, 765 F. App'x 602, 604–05 (2d Cir. 2019); *see also Hicks v. Baines*, 593 F.3d 159, 164–65 (2d Cir. 2010) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990))("[I]f the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action].").

In this case, Plaintiff has satisfied the four elements to establish a *prima facie* claim of retaliation under Title VII and NYSHRL. First, Plaintiff has participated in the protected activity of making informal complaints to hospital supervisors and filing a formal complaint to BLHC's Director of Labor Relations. More specifically, between March 9, 2015 and July 7, 2015, on approximately seven occasions, Plaintiff verbally complained to hospital supervisors, Mr. Ramgahan and Ms. O'Regan, about Defendant Wilson's comments and behavior towards her and other Hispanic female employees. However, the Defendants argue that Plaintiff's first protected activity constituted filing a formal complaint on August 3, 2015 to Labor Relations in accordance with the Hospital's Discrimination Complaints Policy. Because, for the purposes of establishing a retaliation claim, the Second Circuit recognizes both formal and informal complaints as protected activity, the Court rejects the Defendants' argument. *See Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009) (concluding the jury was reasonable in concluding an informal email to a supervisor constituted protected activity); *Sumner*, 899 F.2d at 209 (determining "informal protests of discriminatory employment practices, including making complaints to management" constitutes protected activity).

Second, Plaintiff has demonstrated, and the Defendants do not dispute, that the second and third elements are satisfied. Regarding the second element, Plaintiff has shown that BLHC had knowledge of Plaintiff's informal and formal complaints. In the Second Circuit, "[n]othing 'more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). Here, prior to any disciplinary action, Plaintiff complained to two hospital supervisors about Defendant Wilson, which is sufficient to satisfy the second element. *See e.g.*, *Kwan*, 737 F.3d at 844 (holding the Plaintiff's complaint to an officer of the corporation was sufficient to satisfy the knowledge requirement); *Hagan v. City of New York*, 39 F. Supp. 3d 481, 502 (S.D.N.Y. 2014) (finding that complaints to those in supervisory positions satisfies the corporate knowledge requirement). In addition, after the investigative hearing into the July 7th incident had taken place, but before Plaintiff was terminated, Plaintiff had filed a formal complaint with the Director of Labor Relations of BLHC on August 3, 2015.

Concerning the third element, Plaintiff alleges she suffered numerous adverse actions including: Defendant Wilson directing the patient's mother to file a complaint against Plaintiff about the July 7th incident, termination, being subjected to a hostile work environment, and BLHC advising Dr. Mukherjee not to send a letter of recommendation on Plaintiff's behalf. As established by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, material adverse actions are "employer actions that would have been materially adverse to a reasonable employee or job applicant. . . . [such that they] could well dissuade a reasonable worker from making or

supporting a charge of discrimination." 548 U.S. 53, 57, (2006). In other words, for conduct to

be considered material adverse, it must satisfy an objective standard.

Termination has consistently been recognized as an adverse employment action. *See e.g.,*

*Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotations and citations

omitted) ("Examples of materially adverse employment actions include[s] termination of

employment."); *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.

2004); *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999).

Hence, Plaintiff has satisfied the third element. In addition, Plaintiff has alleged facts sufficient

to establish that Plaintiff suffered other adverse actions. For example, the Second Circuit and

courts in this district have concluded that an employer's refusal to provide a letter of reference

for a former employee constitutes an adverse employment action. *See e.g., Pantchenko v.C.B.*

*Dolge, Co., Inc.,*581 F.2d 1052, 1055 (2d Cir.1978) (holding the refusal to write a

recommendation letter constituted an actionable retaliation claim); *Costantin v. New York City*

*Fire Dep't*, No. 06 CIV. 04631GBDTHK, 2009 WL 3053851, at *14 (S.D.N.Y. Sept. 22, 2009)

("[T]he denial of a request for a recommendation letter may suffice to establish that Plaintiff

suffered an adverse employment action."); *see also Jute*, 420 F.3d 166, 178–79 (2d Cir. 2005)

(holding that a retaliation claim based on a negative job reference claim was actionable).

Similarly, because The Second Circuit has recognized that "'negative employment evaluation

letters,' or reprimands may be considered adverse employment actions," Defendant Wilson

directing the patient's daughter to file a complaint against Plaintiff constitutes an adverse

employment action. *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011)

(quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)); *Millea v. Metro-N. R.*

9

*Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("a reasonable jury could conclude that the letter of reprimand constitutes retaliation").

The Court does not a reach a conclusion as to whether Plaintiff's argument that being subjected to a hostile work environment claim constituted an adverse action. Although, "a retaliatory hostile work environment may . . . constitute [a] materially adverse employment action," in order to establish a *prima facie* retaliation claim, a Plaintiff must satisfy the hostile environment standard. *Marquez v. City of New York*, No. 14-CV-8185 (AJN), 2016 WL 4767577, at *13 (S.D.N.Y. Sept. 12, 2016). As discussed below, the Court finds there are genuine disputes in facts concerning whether the Plaintiff has sufficiently pled a hostile environment claim. Should the trier of fact determine that Plaintiff alleges a viable hostile environment claim, then that claim may also support establishing a *primae facie* case of retaliation provided the element of causation is also met.

Lastly, Plaintiff has established causation. In particular, there is a causal connection between Plaintiff's informal and formal complaints and Plaintiff's termination. In the context of discriminatory retaliation,

> causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.

*Apionishev v. Columbia Univ. in City of New York*, No. 09 CIV. 6471 SAS, 2012 WL 208998, at *7 (S.D.N.Y. Jan. 23, 2012).

Here, Plaintiff has demonstrated causation indirectly and through circumstantial evidence. In particular, Plaintiff has shown that the hospital routinely does not terminate employees for insubordination. For example, during the deposition of Defendant Wilson, she

conceded that insubordination routinely did not result in termination. Similarly, during the deposition of Ms. O'Regan, she stated that the hospital typically adopts a policy of instituting progressive penalties. Given that Plaintiff did not have a history of serious infractions, it appears that the termination of Plaintiff in this case contravened BLHC's typical policy for handling insubordination. Similarly, the time period between Plaintiff's complaints to Plaintiff's ultimate termination was relatively short. Plaintiff made her last informal complaint to hospital supervisors in early June and then she filed a formal complaint to Labor Relations on August 3, 2015. Plaintiff was finally terminated on August 11, 2015. Said differently, there was approximately two months between Plaintiff's last informal complaint and the commencement of the disciplinary proceedings. Furthermore, the time between Plaintiff's formal complaint to Labor Relations and Plaintiff's termination was only 8 days. *See Kwan*, 737 F.3d at 845 (2d Cir. 2013) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir.2001) ("a plaintiff can indirectly establish a causal connection to support a ... retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'"); *Nagle v. Marron,* 663 F.3d 100, 111 (2d Cir.2011) (citation omitted) ("While we have not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line we might draw."). Accordingly, the Court concludes that Plaintiff has established a prima facie case for retaliation as to Defendant BLHC.

Additionally, Plaintiff's retaliation claim regarding Defendant BLCH's refusal to allow Dr. Mukherjee to submit a letter of reference survives, while her claim concerning Defendant Wilson's request that the patient's daughter write a complaint fails. Given the proximity between

Plaintiff's formal complaint to Labor Relations and BLHC's refusal to provide Plaintiff a letter of recommendation—approximately 2 months—it is possible that a reasonable jury could conclude that the Defendant BLHC's motivations were retaliatory. However, Plaintiff's retaliation claim based on Defendant Wilson's request that the patient's daughter write a complaint fails. Because the Plaintiff has not established that Defendant Wilson knew of any informal complaints filed against her by the Plaintiff prior to the July 7th incident, there cannot be a causal connection between any of Plaintiff's protected activity and Defendant Wilson's request.

The Defendants argue that Plaintiff's retaliation theory should fail because Plaintiff's insubordination constitutes a legitimate, non-retaliatory and non-discriminatory reason for Plaintiff's dismissal. For the reasons articulated above, the Court rejects this argument. *See Kwan*, 737 F.3d at 847 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage."). In determining whether a "retaliation was a but-for cause of an adverse employment action," a Plaintiff may meet their burden "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Kwan*, 737 F.3d at 846.

Although Plaintiff's failure to change the patient's diaper constituted insubordination, which carries a potential penalty of termination, the record contains numerous statements and examples that demonstrate insubordination routinely does not result in termination. As a result,

viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude

that retaliation was a but-for cause of Plaintiff's termination. *See Kwan*, 737 F.3d at 845

("[Inconsistent and contradictory explanations for the plaintiff's termination, combined with the

close temporal proximity between the [protected activity] and [the Plaintiff's] termination, are

sufficient to create a genuine dispute of material fact" as to the Defendant's motivations); *see

also Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000) (demonstrating a jury may

resolve the ultimate question of whether the Plaintiff has met "the burden of proving that the

defendant was motivated by prohibited discrimination" or retaliation); *Williams v. Regus Mgmt.

Grp. LLC*, 836 F.Supp.2d 159, 174 (S.D.N.Y.2011) ("The factfinder may disbelieve the

defendant's explanation either because the facts underlying the explanation are false or because

the explanation is weakened by inconsistencies or logical flaws.").

In *Hubbard v. Total Commc'ns, Inc.*, a retaliation case where the plaintiff offered similar

evidence of disparate treatment, the Second Circuit concluded there was a genuine dispute in fact

as to the defendant's motivations for taking adverse employment actions. 347 F. App'x 679, 681

(2d Cir. 2009). In that case, the defendant asserted that the plaintiff's excessive personal Internet

use constituted a legitimate, non-retaliatory reason for plaintiff's termination. *Id.* However, the

plaintiff "established that other . . .employees used the Internet as much, or more, than she did,

and that only she and two other women were monitored." *Id.* As a result, the Second Circuit

concluded that the evidence "called into question [the defendant's] explanation for her

termination" and accordingly, it found that "[t]he jury was entitled to find [the defendant's]

explanation to be pretextual." *Id.* Consistent with *Hubbard*, the Court concludes Plaintiff has

shown that there is a genuine issue in fact regarding whether the Defendants' proffered reason for termination were pretextual.

For many of the reasons articulated above, Plaintiff's claims also survive Defendant's summary judgment motion under the NYCHRL. Plaintiff's NYCHRL retaliation claims are similarly governed by *McDonnell Douglas*' burden-shifting framework. *Malena v. Victoria's Secret Direct*, LLC, 886 F.Supp.2d 349, 361–62 (S.D.N. Y. 2012). However, because of the NYCHRL's broader scope, a plaintiff is not required to show, "a material adverse action" under the NYCHRL. Instead, a plaintiff can prove their claim by showing that "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation omitted). As with Title VII and NYSHRL, however, "the NYCHRL require[s] a causal connection between an adverse act and a protected activity to prove a retaliation claim." *See e.g., Dudley v. N.Y.C Rous. Auth.*, No. 12 Civ. 2771, 2014 WL 5003799, at *25 (S.D.N.Y. Sept. 30, 2014). Because Plaintiff's claims survive the higher standard required under Title VII and NYSHRL, the Plaintiff's claims also survive under the NYCHRL. *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014) ("[T]he city law grants employees broader protections than its federal and state counterparts.") Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claims against BLHC is **DENIED**.

## B. *Claims Against Defendant Wilson*

Plaintiff asserts retaliation claims under NYSHRL and NYCHRL for Defendant Wilson's actions both against Defendant Wilson, individually and as an aider and abettor, and against BLCH for vicarious liability under the NYCHRL.

*i. Individual liability Under NYSHRL and NYCHRL*

Both the NYSHRL and the NYCHRL allow for individual liability for retaliation claims. *See Malena*, 886 F. Supp. 2d at 366. Under the NYSHRL, "an individual is properly subject to liability for discrimination when that individual qualifies as an 'employer.'" *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir.2012) (quoting N.Y. Exec. Law § 296(1)). "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" *Id.* (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541 (N.Y.1984) (per curiam)); *see also Messer v. Fahnestock & Co. Inc.*, No. 03–Civ.–4989, 2008 WL 4934608, at *9 (E.D.N.Y. Nov. 18, 2008) ("a plaintiff may proceed against an individual defendant. . . if the defendant ... ha[d] the power to hire and fire the plaintiff."). Some courts within the Second Circuit, additionally consider the factors of the "economic reality test," which are whether the individual defendant: "1) had the power to hire and fire the employees; 2) supervised and controlled employee work schedules or conditions of employment; 3) determined the rate and method of payment; and 4) maintained employment records." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 450 (S.D.N.Y. 2016) (citing *Pellei v. Int'l Planned Parenthood Fed'n/W. Hemisphere Region, Inc.*, 1999 WL 787753, at *15 (S.D.N.Y. Sept. 30, 1999)).

By contrast, pursuant to the the NYCHRL, there is a "broader basis for direct individual liability," such that employees can be held liable "regardless of ownership or decisionmaking power." *Malena*, 886 F. Supp. 2d at 366 (citations omitted); *see also* N.Y.C. Admin. Code § 8-107(1)(a). But, liability under both the NYSHRL and NYCHRL is limited to those individual employees "who actually participate[d] in the conduct giving rise to plaintiff's [retaliation]

claim." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015); *see also Malena*, 886 F. Supp. 2d at 366; *Schanfield v. Sojitz Corp. of Am.*, 663 F.Supp.2d 305, 344 (S.D.N.Y.2009)."

In this case, individual liability cannot be imposed against Defendant Wilson under the NYSHRL because Defendant Wilson did not exercise sufficient decision-making power over Plaintiff. Although Defendant Wilson was Plaintiff's direct supervisor, her title is not sufficient to impose individual liability under the NYSHRL. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (holding a district manager, who evaluated the Plaintiff and assigned her work was not liable as an "employer" under the NYSHRL); *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 452 (S.D.N.Y. 2016)(citation omitted)("While [the defendant] is alleged to have been plaintiff's 'immediate supervisor,' there is no suggestion that he held any ownership interest in [the company], nor that he had the power to personally make personnel decisions."). Furthermore, Defendant Wilson did not have the authority to hire or fire employees. Instead, she simply could make hiring and firing recommendations. Plaintiff additionally does not allege that Defendant Wilson had an ownership interest in BLHC. Lastly, while Defendant Wilson had the authority to assign Plaintiff to specific areas within the emergency department, Plaintiff does not allege that the Defendant had the ability to control Plaintiff's work schedule, make decisions regarding her rate or payment, or maintain employment records.

However, individual liability can be imposed pursuant to the NYCHRL. Courts in this Circuit have held that where the defendant "suppl[ies] the intent and the complaints that may have led to Plaintiff's termination, [a defendant] may have 'actually participate[d] in the conduct giving rise to the plaintiff's. . . claim[s]." *Malena*, 886 F. Supp. 2d at 366 (quoting *Hozer*, 2012

16

WL 2049498, at *1 n. 1, 2012 U.S. Dist. LEXIS 78811, at *2 n. 1)). "To actually participate in the discrimination ... an individual need not himself take part in the primary violation." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 381–82 (S.D.N.Y.1999). An individual in a supervisory role may also be held liable for a failure to take appropriate investigative or remedial measures upon being informed of offensive conduct. *Id.* At 83.

Here, Plaintiff has offered evidence from which a jury could find that Defendant Wilson actually participated in the conduct giving rise to Plaintiff's claim. In fact, Defendant Wilson asked the patient's daughter to write a complaint against Plaintiff, which initiated disciplinary action against Plaintiff. Defendant Wilson also participated in discussions concerning the penalty that should be imposed. *See Tomka*, 66 F.3d at 1317. In addition, Defendant Wilson failed to investigate the incident after receiving the complaint from the patient's daughter. Therefore, Defendant is not entitled to summary judgment on Plaintiff's individual liability claim under NYCHRL.

### ii. Aider and Abettor Liability under NYSHRL and NYCHRL

For similar reasons, Plaintiff's claim against Defendant Wilson as an aider and abettor also survives. Pursuant to NYCHRL, it is unlawful to "aid, abet, incite, compel or coerce" anyone in doing discrimination acts prohibited by said statute. NYCHRL § 8-107(6). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" *Dunson v. Tri–Maintenance & Contractors, Inc.,* 171 F.Supp.2d 103, 113–114 (E.D.N.Y.2001) (quoting *Feingold v. New York*, 366 F.3d 138, 158–59 (2d Cir.

17

2004)). Accordingly, because Defendant Wilson may be found liable under the NYCHRL, the

Defendant may also be liable as an aider and abettor under the NYSHRL.

### iii. Vicarious Liability Under NYCHRL

Lastly, under the NYCHRL, vicarious liability for the discriminatory conduct of an

employee can be imposed in three circumstances:

> (1) where the offending employee "exercised managerial or supervisory responsibility"
> ...; (2) where the employer knew of the offending employee's unlawful discriminatory
> conduct and acquiesced in it or failed to take "immediate and appropriate corrective
> action"; and (3) where the employer "should have known" of the offending employee's
> unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent
> [it]."

*Baez v. Anne Fontaine USA, Inc.*, No. 14-CV-6621, 2017 WL 57858, at *5–6 (S.D.N.Y. Jan. 5,

2017) (quoting *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010); *see also* N.Y.C.

Admin. Code § 8-107(13). Here, Defendant Wilson was Plaintiff's direct supervisor. As a result,

under the NYCHRL vicarious liability may be imposed on Defendant BLHC if Defendant

Wilson is determined to be individually liable. *See Zakrzewska v. New Sch.*, 928 N.E.2d 1035,

1039 (2010); *McRedmond v. Sutton Place Rest. & Bar, Inc.*, 95 A.D.3d 671, 673, 945 N.Y.S.2d

35, 38 (2012) ("Moreover, the City HRL imposes strict liability on employers for the acts of

managers and supervisors.").[2] Defendant's motion for summary judgment on Plaintiff's

retaliation claim as to Defendant Wilson is therefore **DENIED**.

---

[2] It should be noted that the definition of "employer" under NYSHRL is distinct from that of an
individual, who "exercise[s] managerial or supervisory responsibility" under the NYCHRL. In
short, the NYSHRL employer definition has a higher standard.

## II.    Hostile Work Environment

### A. *Claims Against BLHC*

Pursuant to Title VII and NYSHRL, to prevail on a claim of a hostile work environment, a plaintiff must show that, because of her membership in a protected class, her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993) (quotation marks and citations omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *see also Forrest v. Jewish Guild for Blind*, 3 N.Y.3d 295, 305 (N.Y. 2004) (applying standard for New York state law claim of hostile work environment). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County Sch. Dist. v. Breeden, 532 U.S. 268*, 271, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). In addition, a plaintiff must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted).

In determining whether an environment is "hostile" or "abusive," courts analyze the totality of the circumstances, including: (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's "work performance." *Harris*, 510 U.S. at 23. A single act can meet this threshold, but only if, "by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000); *Richardson v. N. Y. State*

*Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)). A plaintiff must also show both that she found the environment offensive, and that a reasonable person also would have found the environment to be hostile or abusive. *Harris*, 510 U.S. at 21–22. *See also Schwapp*, 118 F.3d at 110; *Carter v. New Venture Gear, Inc.*, 310 Fed. App'x 454, 457–58 (2d Cir. 2009).

The Second Circuit has cautioned district courts that the existence of a hostile work environment "presents mixed questions of law and fact that are especially well-suited for jury determination." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006). Thus, "[t]hat the facts are undisputed does not automatically mandate summary judgment; rather, summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Id.* (citing *Richardson*, 180 F.3d at 438). For this reason, the Court finds that a reasonable jury could find that Defendant Wilson's conduct created a hostile work environment. To elaborate, Plaintiff sufficiently alleges that Defendant Wilson's derogatory comments toward Plaintiff and other Hispanic women, admonishments of Plaintiff speaking Spanish and practice of assigning multiple one-on-one patients at the same time created an offensive work environment for her, satisfying the subjective component of the hostile environment test. Whether a reasonable person would also find Plaintiff's work environment to be offensive in light of the frequency, severity, nature and effects of Defendant Wilson's conduct presents a triable issue of fact. In other words, in applying the objective portion of the hostile work environment test, reasonable minds could differ on whether Plaintiff's work environment was abusive under both Title VII and NYSHRL.

Similarly, Plaintiff's claim survives under the NYCHRL. Consistent with retaliation claims, the standard for maintaining a hostile work environment claim under the NYCHRL is

lower, because the statute was "intended to be more protective than the state and federal counterparts." *Bermudez v. City of New York*, 783 F.Supp.2d 560, 579 (S.D.N.Y.2011) (quoting *Farrugia v. N. Shore Univ. Hosp.*, 13 Misc. 3d 740, 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006)). The NYCHRL imposes liability for harassing conduct that results in any unequal treatment, and "severity" and "pervasiveness" of the conduct is germane to the issue of damages, not liability. *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dep't 2009); *see also Pedrosa v. City of New York*, No. 13 CIV. 01890 LGS, 2014 WL 99997, at *4–11 (S.D.N.Y. Jan. 9, 2014) (citations omitted) ("A hostile work environment claim under the NYCHRL, unlike that under its state counterpart, does not require the complained-of conduct to be 'severe and pervasive.'"). That said, even under the NYCHRL, "'petty, slight, or trivial inconvenience[s]' are not actionable." *Kumaga*, 27 Misc. 3d 1207[A], 910 N.Y.S.2d 405, 2010 NY Slip Op 50619[U], 2010 WL 1444513, at *14 (quoting *Williams*, 872 N.Y.S.2d at 38); *see also Mihalik*, 715 F.3d 102 at 114. Consistent with the Court's determination that there are triable issues of fact under the higher standard imposed under Title VII and the NYSHRL, the Plaintiff's hostile environment claim under NYCHRL survives Defendants' motion.

### B. *Liability Against Defendant Wilson*

The same legal standards concerning individual liability under the NYSHRL and NYCHRL that apply to retaliation claims, also apply to claims of hostile environments. *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 311–12 (S.D.N.Y. 2016); *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016). Accordingly, if BLHC is indeed liable for subjecting Plaintiff to a hostile work environment, then Defendant Wilson could also only be liable as an aider and abettor under the NYSHRL and individually or as an aider

abettor under the NYCHRL if she actually participated in the conduct giving rise to Plaintiff's claim. *See Jain v. McGraw–Hill Cos., Inc.,* 827 F.Supp.2d 272, 277 (S.D.N.Y.2011) ("liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."). Plaintiff's allegations regarding her hostile work environment all emanate from Defendant Wilson's conduct and speech. Accordingly, there is sufficient evidence that would allow a reasonable jury to conclude that Defendant Wilson is liable as an aider and abettor under NYSHRL and individually under NYCHRL. Additionally, if Defendant Wilson is ultimately found to be liable individually, then Defendant BLHC would be vicariously liable because as stated above, Defendant Wilson was Plaintiff's direct supervisor. Defendants' motion for summary judgment on Plaintiff's hostile environment claim under Title VII, NYSHRL and NYCHRL therefore is **DENIED**.

## CONCLUSION

For the reasons set forth by the Court, Defendants' Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated: **September 30, 2019**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**